6980

MASSILLON SIGN AND POSTER CO. v. BUFFALO LICK SPRINGS CO.

1. PAROL EVIDENCE is not admissible to show that goods bought by sample on written order were to have other qualities than those expressed in the order, or that they did not come up to the sample, the sample not being in evidence and no notice served to produce.
   MR. JUSTICE WOODS *thinks the parol evidence here did not tend to contradict or vary the written order.*

2. EVIDENCE—PRINCIPAL AND AGENT.—A principal, in an action against him on a contract made by his general manager, which he admits was within the scope of the agent's authority, should not be permitted to testify that the general manager had not made the contract as he had been instructed, or that he was not authorized to write a letter promising part payment, or that he had forged the name of his principal to a check and had absconded.

3. CONTRACTS—DAMAGES—VENDOR AND VENDEE.—A purchaser is liable in damages to a manufacturer for goods ordered to be manufactured and delivered on order within a specified time, the liability maturing upon the limit of the time the goods should have been ordered delivered, and the measure of damages being the difference between the contract price and the market value of the goods in the hands of the manufacturer.

Before WILSON, J., Chester, November, 1907. Reversed.

Action by Massillon Sign and Poster Company against Buffalo Lick Springs Company. From judgment, plaintiff appeals.

*Mr. A. L. Gaston,* for appellant, cites: *Title of goods passed when manufacture was completed:* 24 Ency., 1063-65-68. *Measure of damages:* 49 N. H., 376; 24 Ency., 1065; 7 A. & E. Ann. Cas., 1172; 113 Tenn., 657; 20 Conn., 38; 43 L. W. R., 905; 45 N. E., 618; 28 Fed., 553; 68 S. C., 367; Chev., 155. *An effective rejection must be unconditional:* 24 Ency., 1090. *Parol evidence is not admissible to vary a written order:* 69 S. C., 99. *Revocation of agency and notice are requisite to show want of power in agent to bind principal:* 3 Elliott on Ev., sec. 1641; 1 Elliott, sec. 252.

*Mr. J. L. Glenn,* contra, cites: *Where a written contract does not show all terms of a contract, parol evidence is admissible to show entire contract:* 61 S. C., 166; 57 S. C., 60; 66 S. C., 61; 65 S. C., 134; 68 S. C., 523; 21 Ency., 1087, 1092, 1094; 72 S. C., 362; 41 S. C., 153.

July 27, 1908. The opinion of the Court was delivered by

MR. CHIEF JUSTICE POPE. The plaintiff, as a corporation under the laws of the State of Ohio, sued the defendant, as a corporation under the laws of the State of South Carolina, for the sum of $945.59.

The defendant in its answer admitted that it owed the plaintiff $426.43, but denied that the balance of the account was due and owing.

The case came on for trial before Judge John S. Wilson and a jury; the jury rendered a verdict in favor of the plaintiff for the sum of $436.60.

The Circuit Judge required that said verdict should be increased by the sum of $25.50, which makes the total amount $462.10, to which the defendant assented; thereupon the plaintiff appealed upon the four following grounds,

and the subdivisions thereunder, which we will now consider in their order.

1. "Error of law by his Honor, the presiding Judge, in permitting the witness Alex. D. Hudson to testify, on cross-examination, as follows:

(a) " 'Q. And the signs ordered by them were to be of that material and style? Mr. Gaston: I object to anything that was finally bought. It is stated in the order. The order speaks for itself. In other words, the order is the agreement. Q. Now, with reference to these fibre signs, you had sample fibre sign with you? A. Yes, sir. Q. Now, was there not an agreement as to what was to be put on these fibre signs that these people ordered? A. Yes, sir.' Objection noted.

"And in admitting the further testimony of this witness, that the fibre signs were to be folded edges.

(b) "In ruling that the witness Alex. D. Hudson be permitted to testify, on cross-examination, the same way in regard to the blankets or horse covers.

"Assignment of error. These orders were in writing and the best evidence of the agreement between the parties, and no testimony, varying, contradicting, adding to, or taking from the terms of the orders is admissible."

It was error in the Circuit Judge to allow the witness Hudson to testify, on cross-examination, at variance with the written order accepted by him requiring certain material and style; and the same way, on his cross-examination, to testify in regard to the blankets or horse covers. It is certainly law that when an agreement is reduced to writing, signed by the parties, that is what the parties have agreed to, and it cannot be altered by an agreement at variance with said order. This exception is sustained.

2. "Error of law in permitting the witness L. D. Childs to testify as follows:

(a) "As to conversation between himself and Mr. Hudson, to the effect that he had no samples of the bill posters.

but did have samples of the fibre signs, and in permitting the witness to testify as to the description of the said sample.

(b) "In permitting the said witness to testify, in answer to this question, 'Well, Mr. Childs, just state what were Mr. Reading's duties and powers, and whether he worked subject to you;' and in answer to this question, 'Did you authorize him to do that or not?' 'Were you present when he wrote those letters about sending a check to these people?' And error on the part of the Court in refusing to strike out this testimony. The error being that this witness first testified, on direct examination, that Mr. Reading had the position of general manager. The letters in evidence were signed by him, and any testimony by this witness as to his instructions to Reading contradicted the written evidence, and the admission of this testimony was very prejudicial to the plaintiff before the jury, for the reason that it was further testified that the said Reading had absconded for forging Mr. Childs' name to checks, thereby creating the impression upon the jury that the defendant was an innocent sufferer on account of the letters written by Mr. Reading to the plaintiff in this suit, and allowing Mr. Childs to repudiate these letters, which were written by the authorized general manager of the defendant company, in the scope of his employment.

(d) "In permitting the witness Childs to testify that the fibre signs did not come up to sample, for the reason that the samples were not in evidence, and there had been no notice to produce the same."

It was certainly error in law to permit the witness L. D Childs to testify as to a conversation between himself and Mr. Hudson, to the effect that Mr. Hudson had no sample of the bill posters, and in permitting this witness to testify as to the description of said sample; again, in permitting the witness to testify that the signs as bought were folded edges, there being nothing in the contract to call for folded edge signs; and, again, in permitting said witness to testify that Mr. Reading's duties and powers were as the agent of the

defendant, and other transactions of said Reading as agent of the defendant.

The errors being that this witness testified that the same Mr. Reading had the position of general manager; the letters in evidence were signed by him, the said Reading, and any testimony as to his instruction to said Reading contradicted this written evidence, and the admission of such testimony was very prejudicial to the plaintiff before the jury. The witness Childs was also allowed to testify that the fibre signs did not come up to the sample, for the reason that the sample was not in evidence and there had been no notice to produce the same. So far as the testimony of Mr. Childs was concerned, it may be admitted that his general manager, Mr. Reading, was derelict in the performance of his duties as general manager, but there was no testimony that the plaintiff knew of these matters or produced the same; the object of all contracts in writing is to avoid the inaccuracies of memory, and this exception points out how injuries were wrought to the plaintiff by failing to observe the written contract in question. This exception is, therefore, sustained.

3. "Error in presiding Judge in charging the jury: 'I hold in this case that these memoranda here did not necessarily embrace the whole contract. So you are to take what is of these papers and the other evidence in connection with what was done at the time the memorandum was made;' for the reason that, by this charge, his Honor permitted the jury to consider testimony which was inadmissible, and varied, contradicted and altered the written terms of the contract."

The Circuit Judge was in error when he held that these written agreements did not necessarily contain the whole contract, and the Circuit Judge allowed the jury to consider testimony which was inadmissible because it varied, contradicted and altered the written terms of the contract. This exception is sustained.

4. "The Circuit Judge refused the motion for a nonsuit, in which action he was in error.

(a) "Because the verdict did not carry out the charge of his Honor to find for the plaintiff the value of the posters which had been manufactured and set aside by the plaintiff to defendant's order."

The law requires that the titles to said articles passed to the defendant upon the appropriation of the finished article to the contract. We remark just here that by the terms of the contract certain posters were to be delivered in certain amounts at different times; part of them had been accepted by the defendant, and, by the terms of his contract, he was liable to pay for the whole. It made no difference that all of the articles were not furnished to the defendant, because it was his fault that the balance of said posters, when finished by the plaintiff, were not called for. It is true the verdict embraced a part of these very posters, but it did not include the whole number which had been completed for the defendant by the plaintiff.

(b) "The verdict of the jury disregarded the charge of his Honor, requiring goods which were manufactured and held subject to defendant's order, according to the terms of the contract, to be recovered for."

Whenever a jury disregards the directions of a Judge a new trial should be ordered by him, and when not done by him, it will be done by this Court. The verdict of the jury should be responsive to the rulings of law by the Circuit Judge; whenever and wherever there is failure to do so, the law requires that a new trial shall be awarded on account thereof.

(c) "The verdict of the jury was in error in failing to find for the plaintiff the value of 125 horse covers, the evidence showing that the horse covers were according to sample and as ordered; the letters written by the defendant showed that the defendant had retained these horse blankets and accepted them."

There had been a failure by the plaintiff to manufacture according to design horse covers entitled "Pickmeup," but the correspondence showed that the alteration had been

accepted by the defendant, and the defendant was liable therefor.

(d) "Because the verdict was contrary to law, in failing to find for the plaintiff the value of the fibre signs which had been received and accepted by the defendant, and had never unequivocally been tendered to the plaintiff."

This testimony was furnished by written letters by the defendant and these letters should have been construed by the Court, which was not done.

(e) "Because the verdict of the jury was contrary to law, being based upon the testimony of Mr. Childs that Reading had absconded and had no authority to write the letters, thus contradicting the written correspondence between the parties, seriously prejudicing plaintiff's case by placing the odium of certain letters promising to pay upon the authorized agent of the defendant, who has since absconded, and creating in the minds of the jury that Mr. Childs and the defendant were the innocent victims of the rascality of their agent in this suit."

No doubt the general manager, Reading, was unworthy of the high position occupied by him, but this was the defendant's misfortune, for which the plaintiff was in no wise responsible. It was but just that the plaintiff should not be subjected to the slightest odium attaching to Mr. Reading's misconduct, and the Circuit Judge was in duty bound to protect the plaintiff from any result of the testimony here complained of.

(f) "Because the verdict of the jury was contrary to the law, in that it was found upon testimony that was inadmissible and was worthless to contradict or overthrow the terms of the written orders."

We have already virtually sustained this subdivision in every respect; of course the verdict of the jury should alone be based upon the testimony that was admissible, and it was not in the power of the jury to use worthless testimony to contradict written orders.

This exception and its subdivision are sustained.

It is the judgment of this Court that the judgment of the Circuit Court should be reversed, and a new trial is ordered.

Messrs. Justices Jones *and* Gary *concur in the result.*

Mr. Justice Woods, *concurring and dissenting.* This action was brought to recover $945.59, alleged to be due by defendant on a written contract by which the defendant ordered from plaintiff posters, fibre signs and horse covers, all to be used by defendant for advertising purposes.

The written orders given by L. L. Reading, the defendant's general manager, to plaintiff's agent were as follows:

"Order No.........          February 15, 1906.
          Buffalo Lick Springs Company.
Ship to ..................................
At Chester, S. C.
How ship ...................... When?   At once.
Terms .............................
25 M 12x18 fibre signs, $5.75 M.   Run in red.   O. K.
L. L. Reading, Gen. Mgr.
Credit commissions to Greenwood Adv. Co."

"Order No.........          February 15, 1906.
          Buffalo Lick Springs Company.
Ship to ..................................
At Chester, S. C.
How ship ................ When ..............
Terms: As agreed.
     5,000 1-sheet posters..................$195  00
     5,000 4-sheet posters................. 490  00
1 M each shipped at once; 1 M 60 days.   Balance as ordered, and all to be taken in one year.   Terms: 30 days after shipment.   O. K.   L. L. Reading, Gen. Mgr.   Four colors.
Credit commissions to Greenwood Adv. Co."

"Order No........          February 15, 1906.
          Buffalo Lick Springs Company.
Ship to ...................................
At Chester, S. C.
How ship ...............  When ................
Terms .....................................
250 horse blankets, $107.50.  2 forms.  Run in red.
O. K.   L. L. Reading, Gen. Mgr.
Credit commissions to Greenwood Adv. Co."

The defendant admitted indebtedness for articles used and embraced in the orders to the amount of $426 and interest, but denied liability for the remainder of the sum of $945.59, with interest, claimed by the plaintiff as the balance due under the contract. The verdict was for only $426, the amount admitted by defendant to be due. The Circuit Judge refused a motion for a new trial.

L. D. Childs, president of the defendant company, was allowed to testify to a parol agreement with plaintiff's agent, Hudson, who took the orders, that one-half the horse covers were to have printed on them, "Buffalo Lick Springs Water and Ginger Ale," and the other half "Drink Delightful Pickmeup. It satisfies;" and that plaintiff sent the entire order of two hundred and fifty covers with the words first above quoted printed on them; that the agent exhibited samples of the fibre signs, and that, notwithstanding those contracted for were to have folded edges, they were sent with straight edges. This evidence did not tend to contradict or vary the written orders. The writing contained no description of the fibre signs, except the size and color; no description of the posters, except they were to be of four colors; and none of the horse covers, except they were to be of two forms and red in color. The articles ordered were for advertising a specific enterprise, and the omission from the written order of the advertising words, and of the quality of the material, shows that these matters were to be covered by some other agreement. This other

portion of the contract not covered by the writing and not
inconsistent with it, parol testimony was competent to prove.
*Ashe* v. *Ry. Co.,* 65 S. C., 134, 43 S. E., 393; *Earle* v.
*Owings,* 72 S. C., 362, 51 S. E., 980.

The case of *Lumber Co.* v. *Evans,* 69 S. C., 93, 48 S. E.,
158, is entirely different. There the attempt was made to
show by parol evidence that an unconditional written con-
tract was made on condition that it should be effective only
when assented to by another person.

The exceptions as to the admission of testimony on this
point are not well taken.

For the same reason, there was no error in the instruction
to the jury: "I hold in this case that these memoranda here
did not necessarily embrace the whole contract. So you are
to take what is of these papers and the other evidence in
connection with what was done at the time this memoranda
was made."

The written orders were signed on behalf of the plaintiff
by L. L. Reading as general manager. Childs, president
of the defendant company, testified Reading was in fact its
general manager. While Reading held this relation
to the defendant company, in its name he wrote a
number of letters to the plaintiff, and in one of these
letters the promise was made to send a check for, at least,
part of the account in a few days. Regarded as a letter
from the defendant, this letter was obviously of value to
the plaintiff. The defendant was allowed to introduce this
evidence of Childs, president, in repudiation of Reading's
authority to write the letters on behalf of the defendant:
"Q. Well, Mr. Childs, just state what were Mr. Reading's
duties and powers, and whether he worked subject to you?
A. Mr. Reading was supposed to be entirely under my
instructions. Q. Mr. Childs, were you present when he
wrote those letters about sending a check to these people?
A. No, sir; I didn't know anything about that. Q. Did you
authorize him to do that or not? A. No, sir; I authorized

him to write them and tell them that we would make no payment whatever until the matter of those fibre signs was settled; that I was unwilling to take them at any price; I was unwilling to take the goods—they were unsatisfactory—and be subject to a suit on the disputed part."

A general manager is the general agent and representative of a corporation in its dealings with the public, and it cannot repudiate action taken by him in the apparent scope of his authority. 14 A. & E. Enc., 1002; 10 Cyc., 924. The testimony of Childs, introduced to prove the letter to have been written without authority, was, therefore, incompetent. There was also error in the admission of irrelevant testimony of the same witness concerning the forgery and flight of Reading, though this last error was not of sufficient importance to warrant a reversal on that ground alone.

The exceptions as to the refusal to grant a new trial depend on whether the verdict was contrary to the instructions of the Circuit Judge, applied to the undisputed facts of the case.

First, as to the posters. The defendant actually received 5,609, all of which were made according to the contract. Liability for these was admitted, and their price only was included in the verdict. The contract provided the defendant should order all the posters within a year from its date. This it failed to do, thus leaving on the hands of the plaintiff the remainder of the posters specially printed for defendant and of no value to any one else. The failure of the defendant to order the goods within a year was a breach of the contract, and the measure of the plaintiff's damages is the difference between the contract price and the market value of the goods in the hands of the plaintiffs. *Miller* v. *Hilliard,* Cheves, 155; *Huguenot Mills* v. *Jempson,* 68 S. C., 363, 47 S. E., 687; *Brooke* v. *Laurens Milling Co.,* 78 S. C., 200.

The defendant contends, however, that the plaintiff had no right of action until the expiration of thirty days after February 15, 1907, and having sued on 2d March, 1907,

his action as to this item was premature. The contract does say: "Terms, 30 days after shipment;" but these words obviously refer to the time of maturity of the defendant's debt, upon its compliance with its contract to order the goods, and not to its liability for a breach of its contract to order and receive the goods. The verdict was on this point contrary to the law as correctly laid down by the Circuit Court.

Second, as to the horse covers. The verdict covered the price of one-half of the horse covers, which the defendant admitted were made in accordance with the contract. There was evidence that the other covers were not made according to the contract, and these, though sent to defendant, were not used and not unconditionally accepted. There was no error of law in refusing to grant a new trial because the verdict did not include the price of all the covers.

It is equally clear there was evidence to support the finding that the defendant was not liable for the price of the fibre signs. Some of the letters of the defendant, it is true, may tend to show defendant did not intend to claim entire exemption from liability for the signs, but only an abatement in the price. But, on the other hand, there was evidence tending to show not only that the signs did not have folded edges, as ordered, but that on account of the lack of such edges they were of no value. The issue of fact thus made was for the jury.

The judgment of the Circiut Court is reversed and a new trial granted.