### WILLEN v. SCHILLICCI et al.

### In re WILL V. CONNELL CO., Inc.

(Circuit Court of Appeals, Fifth Circuit. December 6, 1922. Petition for Rehearing Denied January 13, 1923.)

#### No. 3904.

**1. Bankruptcy ⟨key⟩165(2)—Transaction between wholesaler and retailers held not a preference.**

A contract whereby a wholesale dealer sold flour and lard to his customers in excess of their storage facilities, to protect them against an expected increase in price, and agreed to deliver the goods in the future, if the buyers would sign trade acceptances payable at the time of delivery, was an agreement for sale, and not a lending of the buyers' credit to the wholesaler, so that the buyers were entitled to the goods after the bankruptcy of the wholesaler, if there had been a delivery thereof to the buyers at a time when they had no knowledge of the wholesaler's insolvency.

**2. Bankruptcy ⟨key⟩140(1)—Delivery to warehouseman for buyers completes sale.**

Where a wholesaler sold to his customers flour and lard in excess of their storage facilities, a delivery by him thereafter, with the consent of the buyers, of a sufficient quantity to comply with the contract to a warehouseman for the buyers, completed the sale, so as to vest the title in the buyers as against the trustee in bankruptcy of the wholesaler appointed after the delivery.

**3. Sales ⟨key⟩210—Separate buyers can waive objection to delivery containing different brands or all of them in one bulk.**

Four separate buyers of flour from the same wholesaler can waive objections that the delivery by the wholesaler to a warehouseman for the buyers was made without segregating the quantity for each buyer and contained two different brands of flour.

Appeal from the District Court of the United States for the Southern Division of the Northern District of Alabama; Henry D. Clayton, Judge.

In bankruptcy. On claim by Sam Schillicci and others against Charles F. Willen, as trustee in bankruptcy for the Will V. Connell Company, Inc., for certain goods which the bankrupt contracted to sell to the claimants before the bankruptcy. Decree for the claimants (278 Fed. 288), and the trustee appeals. Affirmed.

⟨key⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Victor H. Smith, of Birmingham, Ala. (Z. T. Rudulph, of Birmingham, Ala., on the brief), for appellant.

William S. Pritchard, of Birmingham, Ala. (Sterling A. Wood, of Birmingham, Ala., on the brief), for appellees.

Before WALKER, BRYAN, and KING, Circuit Judges.

KING, Circuit Judge. The appellees in this case were merchants doing business in towns near Birmingham, Ala. They had from time to time done business with the Will V. Connell Company, of Birmingham, the bankrupt, a large wholesale grocery concern. It appeared that on several occasions the Connell Company had offered to sell to these appellees, or some of them, flour or lard, to be delivered later as the purchaser should require, at the then prevailing price, regardless of the rise or fall of the market, provided the purchaser then delivered to said company his trade acceptance for the agreed price, payable in the future.

At the time when one, if not more, of these prior acceptances had become due, Connell Company had not furnished the goods bargained for, and the acceptance had been taken up with money furnished by Connell Company. During January, 1921, according to the testimony, agreements were made by Connell Company with Rose Schillicci and the Central Grocery Company for the sale to each of them of specified numbers of barrels of flour and drums of lard, and with Sam Schillicci of 150 barrels of flour, and Sam Romano of certain drums of lard. On these dates in January each appellee executed a trade acceptance, payable in the future, covering the price of the goods bargained for by him. The evidence showed that the Connell Company expressed its opinion to the purchasers that the price of the goods would advance; that the buyers said they did not have room for so many goods, and the seller agreed that they could remain with it until needed by the buyers.

On February 12, 1921, at the instance of creditors, an audit was commenced of the books of the Connell Company. The appellees, however, did not know of this. On the same day said company notified the buyers to remove the goods purchased, and on their demurring because of a want of room in their respective places of business for so large a quantity, on the insistence of the Connell Company that they be moved, and on its suggestion, it was agreed that the goods should be delivered to the buyers by placing them with the Harris Transfer & Warehouse Company. Connell Company delivered on Saturday, February 12th, or Monday, 14th, to said Warehouse Company, on account of these four appellees, a quantity of flour aggregating the quantity sold to the appellees and drums of lard equaling the amounts sold to them, and the same were received by the Warehouse Company for the appellees. The seller sent to each purchaser an invoice, bearing date February 12, 1921, specifying the articles sold, describing the flour as "Gold Medal"; but the evidence warrants the conclusion that the agreement to purchase only called for hard wheat flour, of which Gold Medal was one brand.

On February 15, 1921, the Warehouse Company issued and delivered to each appellee its warehouse receipt stating it had received from, and held for, each appellee, as owner, the goods mentioned therein. Each receipt contains agreements by the owner as well as by the Warehouse Company, and each receipt is signed by the respective appellee, to whom issued as owner, as well as by the Warehouse Company. The receipts specify the same quantities of flour as the invoices, but are expressed as sacks of 98 pounds each; the invoices as barrels, which it is well known contain 196 pounds, there being two sacks to each barrel. The warehouse receipts call only for flour, and do not describe the flour as Gold Medal. It appears that of the flour delivered by Connell Company to the Warehouse Company 85 barrels were Superlative flour, the rest being Gold Medal. The lard was that named in the invoices.

It is insisted that the delivery of these goods to the warehouse for the appellee did not constitute a sale to them; that at the time of this delivery the bankrupt was insolvent; that the appellees knew it; that there was no separation of his, or its, goods to each claimant; that no title to the goods had passed to the several claimants; and that the deposit of these goods with the Warehouse Company for their account was a void preference. The goods were seized by the trustee in bankruptcy and claims for them filed by the several appellees. By consent of all parties they have been sold and the proceeds are held to await the result of the claims. The referee rejected the claims of appellees, holding that they had no title to the goods, that if they did purchase they did so with notice of the insolvency of the seller, and that the transaction would amount to a void preference.

On petition for review the District Judge reversed the finding of the referee and sustained the several claims of appellees. The trustee has appealed from this decree.

1. We think the evidence in this case sustains the finding of the District Judge. The appellees were small customers of this large wholesale house, with which they were accustomed to deal. The evidence indicates they had the greatest confidence in it, and points to their belief in its financial strength, rather than to any apprehension of its insolvency. While it was doubtless in fact insolvent, there is nothing to suggest that the appellees had any notice, or thought, of such a thing.

[1] 2. The transaction as testified to by Connell and the appellees, who were the only witnesses examined as to the transaction and relationship between them, did not show a lending of credit by the appellees to the bankrupt, but an agreement for the purchase of certain quantities of goods which the seller was to hold for them, giving them credit and taking their acceptances, they to have the benefit of existing prices which they were assured and thought would advance, the seller keeping the goods until they called for them, their storage room being limited. At this time it is evident that no goods had been set apart to any or all of these purchasers and no completed sale made.

[2] 3. But on February 12th Connell Company and these purchasers agreed that he should deliver as and for the goods purchased by them 250 barrels of flour and the quantities of lard purchased to the

Harris Warehouse. Connell Company set apart and physically delivered to the warehouse these goods as those sold to these four appellees. They were separated and removed from its store and delivered for these appellees to the Warehouse Company. Thereafter the bankrupt had no custody or control of them. They were legally and actually put into the possession of a bailee for the present claimants.

[3] It is true that there had been no separation of the flour and lard for each claimant from the stock which the warehouseman had in possession; but they were held by him, separated and apart, for the four claimants. It is also true that all of the flour was not Gold Medal; but the appellees accepted the Warehouse Company's receipts and contracts for the delivery to them of certain parts of this flour and lard, in full discharge of all obligations of Connell Company of its contract to sell, and as a good delivery. The appellees could accept a share of the separate goods delivered to the warehouse as representing the four of them, and if they did not decline the delivery of their aggregate purchases and of the goods set apart as such purchases because not divided between the four, it would be a waiver of any such objection, and would make the delivery in bulk for all, to the warehouseman, a good delivery of the goods so far as concerned the bankrupt and those claiming under him, as to any claim by them that the title of the bankrupt to the goods had not been divested.

We therefore think that the goods were delivered and accepted by the appellees in good faith, and without any notice of the bankrupt's insolvency or failing condition, before the bankruptcy, and that they were entitled to the possession thereof and to the proceeds of their sale.

The decree of the District Court is affirmed.

---

⟺For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes