In the Matter of COLONIAL DISTRIBUTING COMPANY, Bankrupt.

No. 67-28.

United States District Court
D. South Carolina.

Oct. 16, 1968.

Roy D. Bates, of Marchant, Bristow & Bates, Columbia, S. C., for Trustee.

William K. Easterling, of Easterling & Brantley, Columbia, S. C., for Gilbert Ross.

David N. Wilburn, Jr., of Jolly & Wilburn, Union, S. C., for Pete N. Leventis and Kicidis Enterprises.

## ORDER CONFIRMING THE REPORT OF SPECIAL MASTER IN BANKRUPTCY

HEMPHILL, District Judge.

The Special Master in Bankruptcy filed, October 4, 1968, his Report on the claims of Gilbert Ross, Pete N. Leventis and Kicidis Enterprises, Inc. No written objections were filed with the court within the ten (10) days allowed and required by Rule 53(e) (2),[1] Federal Rules of Civil Procedure.

The controversy stems from an arrangement wherein each of the claimants, in order to take advantage of volume discounts, arranged with bankrupt to purchase, without immediate delivery in full, certain wines and liquors. As need arose each claimant expected to go to, or send, to bankrupt's warehouse, for further delivery. The goods were not marked, segregated or set aside in any way in the warehouse. On February 27, 1967, learning of the closing of bankrupt's warehouse by the South Carolina Department of Agriculture, claimants sought further delivery which was denied. They instituted claim and delivery[2] proceedings in the South Carolina courts resulting in the taking of wares of values later admitted. Each claimant later filed claim against the

George E. Lewis, of Turner, Padget, Graham & Laney, Columbia, S. C., Trustee in Bankruptcy.

---

1. Fed.R.Civ.P. 53(e) (2): In Non-Jury Actions. In an action to be tried without a jury the court shall accept the master's findings of fact unless clearly erroneous. Within 10 days after being served with notice of the filing of the report any party may serve written objections thereto upon the other parties. Application to the court for action upon the report and upon objections thereto shall be by motion and upon notice as prescribed in Rule 6(d). The court after hearing may adopt the report or may modify it or may reject it in whole or in part or may receive further evidence or may recommit with instructions.

2. Title 10, Chapter 32, S.C.Code 1962 Anno. §§ 10–2501 through 10–2516.

bankrupt estate, to which the Trustee objected and filed counterclaim insisting that the particular creditors had received a preference. The Trustee asked the Court of Bankruptcy to set aside the preferences, void the claim(s) and order reimbursement.

After a hearing at which all interested parties were represented, the Special Master in Bankruptcy rendered his decision (report). He granted the complete relief sought by the Trustee and concluded:

Title to goods transferred to claimants was in the Bankrupt and such transfer meets all of the elements of a voidable preference under Section 60 of the Bankruptcy Act. This establishes the basis for the trustee's objection to the allowance of claimants' claims under Section 57(g) of the Bankruptcy Act pending a return of the goods and invokes the summary jurisdiction of the Bankruptcy Court to order such a return of the goods to the Trustee.

The Special Master in Bankruptcy recommended:

I, therefore, recommend that this court approve the above findings and conclusions and pass its order disallowing the claims, and further that claimants be ordered to pay the value of the goods to the Trustee in the following amounts:

(a) Claimant Gilbert Ross, Three Hundred Ninety Six ($396.00) Dollars;

(b) Claimant Pete N. Leventis, One Thousand One Hundred Thirty Seven and 69/100 ($1,137.69) Dollars;

(c) Claimant Kicidis Enterprises, Inc., Seven Hundred Twenty Four and 95/100 ($724.95) Dollars.

This court adopts the Master's Report in full, and its Conclusions and Recommendations, and same are directed to be carried out by the parties involved.

The Trustee is ordered to file appropriate statement of interests and costs to be taxed against claimants.

Nothing herein ordered shall prevent claimants from pursuing their claims as common creditors.

And it is so ordered.

(s) Robert W. Hemphill, United States District Judge.

## REPORT OF SPECIAL MASTER IN BANKRUPTCY

To: HONORABLE ROBERT W. HEMPHILL UNITED STATES DISTRICT JUDGE

I, the undersigned Special Master in Bankruptcy, report that on August 6, 1968, after due notice to all parties, a hearing was had before me, attended by the attorneys of record, on the merits of the Trustee's objection to claims of Gilbert Ross, Peter N. Leventis and Kicidis Enterprises, Inc., filed herein, on the ground that said Claimants had received a preference from the bankrupt voidable under Section 57(g) of the Bankruptcy Act.

After careful consideration of evidence taken, stipulations submitted and arguments of the attorneys, I make and report Findings of Fact and Conclusions of Law as follows:

## FINDINGS OF FACT

1. That in January of 1967, Claimants, retail liquor dealers, entered into agreements with Bankrupt, Colonial Distributing Company, for the purchase of certain wines and liquors at a specified purchase price which was paid in full by Claimants to Bankrupt.

2. That, according to the terms of said agreement, a portion of the wines and liquors were delivered by Bankrupt to Claimants, the remainder to be delivered at a later time upon notification.

3. That Claimants did not call for further delivery of the goods until February 27, 1967 when they learned that Bankrupt's warehouse had been closed by order of the South Carolina Department of Agriculture.

4. That on February 28 and March 1, 1967 claimants received possession from Bankrupt of a portion of the wines and liquors called for in the agreements through Claim and Delivery proceedings in the Richland County Court.

5. That the wines and liquors so received by Claimants through Claim and Delivery proceedings were less than the amounts called for in the agreements and in some instances were of a bottle size different from that described in the agreements.

6. That the value of the wines and liquors taken by Claimants on February 28, 1967 and March 1, 1967 is as follows:

(a) Claimant Ross, wines of a value of Three Hundred Ninety Six ($396.00) Dollars;

(b) Claimant Leventis, wines and liquors of a value of One Thousand One Hundred Thirty Seven and 69/100 ($1,137.69) Dollars;

(c) Claimant Kicidis Enterprises, Inc., wines of a value of Seven Hundred Twenty Four and 95/100 ($724.95) Dollars.

7. That at no time after contracting for the sale of wines and liquors and payment by Claimant to Bankrupt was an attempt made to ascertain whether all the wines and liquors to be delivered at a later time were in possession of or owned by Bankrupt and during this period there were at least occasions when the bankrupt did not have possession of all wines and liquors called for.

8. It was the understanding between bankrupt and claimants that if wines and liquors could not be delivered when requested by claimants, bankrupt would refund the purchase price paid for such merchandise.

9. That during the period from the execution of the agreements and the Claim and Delivery actions, wines and liquors called for in the agreement were never set aside, marked, segregated or otherwise identified to the contract.

10. That within 30 days after the agreements, Bankrupt reported the transactions and paid taxes thereon to the South Carolina Tax Commission as required by law.

11. That at the time Claimants received possession of the wines and liquors by Claim and Delivery proceedings in the latter part of February and early March of 1967, Bankrupt was insolvent and Claimants knew or had reasonable grounds to know of the insolvency.

12. That on April 21, 1967 Colonial Distributing Company was adjudged a bankrupt by order of the United States District Court for the District of South Carolina.

13. That in May of 1967, Claimants filed Proofs of Claim in Bankruptcy for the difference in the value of wines and liquors received and the purchase price paid to Bankrupt.

## CONCLUSIONS OF LAW

This matter arises out of a common business practice in the marketing of alcoholic beverages. To enjoy a quantity discount price, retailers enter into an arrangement with distributors to purchase larger amounts of wines and liquors than they can conveniently store in their shops, paying the entire purchase price at the time of the agreement, with the wholesaler to hold possession of a part of the order until notice of delivery from the retailer. Claimants and the Bankrupt, Colonial Distributing Company, were operating under such a "bill and hold" arrangement. Upon learning of Bankrupt's financial difficulties, Claimants seized a portion of undelivered wines and liquors called for in the arrangements and after bankruptcy adjudication filed claims against the estate for the value of the remainder.

The Trustee invokes the summary jurisdiction of the Bankruptcy Court in filing objections to the claims of creditors under Section 57(g) of the Bankruptcy Act, 11 U.S.C. § 93(g)

158

(1964), on the ground that these creditors have received preferences under Section 60 of the Act. 11 U.S.C. § 96 (1964). While a direct action under Section 60 to set aside a preference must be brought in plenary proceedings, the United States Supreme Court has held that once summary jurisdiction has attached to determine the allowance of claims, the Bankruptcy Court retains jurisdiction to order surrender of the preference. Katchen v. Landy, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966).

The essence of the Trustee's contention is that the "bill and hold" agreement in January of 1967 created a creditor-debtor relation between the Bankrupt and Claimants. That is, when Claimants paid the full purchase price and received partial delivery of the goods they become mere creditors of the bankrupt for the value of the liquors held for future delivery. Thus when the goods were delivered to claimants on February 28 and March 1, 1967 through Claim and Delivery proceedings, this was in payment of the debt created earlier when the purchase price had been paid under the terms of the agreement. If the Trustee's major premise of the creditor-debtor relation is correct, there is no duobt of the sylogistic conclusion that the transfer of possession was a preference under Section 60 of the Bankruptcy Act. In paraphrasing the elements of a preference, this would constitute transfers of the debtor's property, to and for the benefit of the creditors which would give them a greater percentage of their debts than other creditors, on account of antecedent debts, made within four months of bankruptcy while the debtor was insolvent and when the transferees had reasonable cause to believe that the debtor was insolvent.

Claimants contend, however, that title to the liquors passed to them at the time of the bill and hold agreements and payment of the purchase price, with possession deferred until a later time. Under this premise, the claim and delivery proceedings whereby they acquired

possession of such wines and liquors as could be found in Bankrupt's warehouse, was merely a reclamation of their property held by the Bankrupt. Thus the essential elements of a Section 60 preference of "a transfer of property of a debtor" and "for or on account of an antecedent debt" are absent.

This brings us to the essence of the conflict in this matter testing the conflicting major premises of the parties: whether title to all of the liquors called for in the "bill and hold" agreements passed to claimants at the time of entering into the agreements? This question must be answered under the authority of the common law of South Carolina.

■ The location of title to goods under a sales contract has been a source of frequent litigation and judicial difficulty in anglo-American law since the English case of Tarling v. Baxter announced the test as the intentions of the parties. 6 C & B 360, 108 Eng.Rep. 484 (K.B.1827). See, South Carolina Tax Commission v. Schafer Distributing Co., 247 S.C. 491, 148 S.E.2d 156 (1966). This leading case did provide the presumption of such intention as the time of contracting with respect to existing goods then in a deliverable state even though delivery or payment of the purchase price is to be delayed. This so-called presumption has become the general common law substantive rule, subsequently codified in a majority of states by Section 19 of the Uniform Sales Act. Frazer v. Hilliard, 2 Strob. 309 (1848). See Pregnall v. Miller, 21 S.C. 385 (1884).

■ The corollary of this rule is equally well established where the goods are unascertained at the time of contracting. In such a case, no property interest can pass to the buyer unless and until the goods are appropriated to the contract. 77 C.J.S. Sales § 253(1) (1952); 2 Williston on Sales § 258 (Rev.Ed.1948). See, Massillon Sign and Poster Co. v. Buffalo Lick Springs, 81 S.C. 114, 61 S.E. 1098 (1903). This rule

was codified by the Uniform Sales Act, Section 17 and subsequently by the Uniform Commercial Code requirement of "identification" of the goods to the contract. S.C. Code of Laws, 1962 § 10.2–401.

■ More specifically with regard to the findings of fact in the instant case, where the contract calls for the sale of goods from a larger stock, title does not pass to the buyer until the portion contracted to be sold is separated and set apart for the buyer by an actual choice of a specific article or specific goods to be supplied in the performance of the contract. 77 C.J.S. Sales § 253(2) (1952); 46 Am.Jur. Sales § 426 (1943).

■ Claimants contend that there was an appropriation of the goods to the contract by the fact that following the agreements Bankrupt reported the transactions as sales and paid taxes thereon to the South Carolina Tax Commission as required by S.C. Code of Laws 1962 §§ 65–746 and 65–1284. Had the Bankrupt not actually owned the liquors at the time of the agreement, (which was true in an indeterminate amount) Claimants would not seriously assert that by these acts of reporting, title would have passed to non-existing goods. The requirement of appropriation or identification of goods to the contract applies equally to unascertained goods to be sold from a larger lot and non-existent or future goods. 46 Am.Jur. Sales §§ 424, 425 (1943). The minimal requirement for the passage of title that the goods sold must be separated out of the larger mass and identified to the contract was not met by description of the filed reports.

Claimants make the further alternative argument that Rule thirteen of the South Carolina State Department of Agriculture, promulgated under the authority of S.C. Code of Laws 1962 § 69–104, governs this transaction and removes the common law requirement of appropriation in order to vest title to goods stored in a state warehouse. These regulations authorize the commingling of fungible commodities and further provide: " * * * the various depositors of the mingled commodities shall own the entire mass in common and each depositor shall be entitled to such portion thereof as the amount deposited by him bears to the whole * * *." This provision has no application to the case at hand and apparently contemplates the storage of goods in state warehouses by persons who have title to such goods at the time of storage. In other words, owners of goods who deposit in a common mass acquire a proportionate ownership interest in the mass. This adds nothing to the question of whether Claimants ever acquired ownership rights to the goods.

Finally, Claimants appeal to the Bankruptcy Court to invoke its jurisdiction as a court of equity to relieve them from the burden of the common law which would deny them ownership rights in goods for which the purchase price has been paid. The cases of In re Will v. Connell Co., 285 F. 12 (5th Cir. 1922), Greif Bros. Cooperage Co. v. Mullinix, et al., 264 F. 391 (8th Cir. 1920), and Gage Lumber Co. v. McEldowney, 207 F. 255 (6th Cir. 1913) cited by Claimants, spoke in general language of equitable rights in bankruptcy in holding that title had passed but all of these cases are distinguishable on their facts. While this role of a Court of Bankruptcy is indisputable, the concept of title passing and the applicable standards are questions of law. In any event, there is no equitable principle which would dictate that these Claimants should enjoy any greater rights to the limited assets of the bankruptcy estate over other creditors who have advanced money and must now share in the loss occasioned by their disappointed expectations.

■ We return then to the governing rule in this dispute that title does not pass to unascertained goods until they have been appropriated or identified to the contract which dictates the result that at the time Claimants took possession of the wines and liquors they were creditors and not owners of the goods.

This position makes it unnecessary to pass on the further contention of the Trustee that since South Carolina Tax Commission Regulation 4 requires that the wholesaler or a common carrier deliver liquors to the retailer, actual delivery became a necessary condition to the execution of the contract and thus a prerequisite for the passage of title. See, South Carolina Tax Commission v. Schafer Distributing Co., 247 S.C. 491, 148 S.E.2d 156 (1966). The additional factual bases for the Trustee's position that the parties understood that the purchase price would be refunded for any liquors not delivered when requested by Claimants does, however, further support the position that the goods were not ascertained at the time of contracting and thus title could not pass until they had been identified to the contract.

## CONCLUSIONS

Title to goods transferred to Claimants was in the Bankrupt and such transfer meets all of the elements of a voidable preference under Section 60 of the Bankruptcy Act. This establishes the basis for the trustee's objection to the allowance of claimants' claims under Section 57(g) of the Bankruptcy Act

pending a return of the goods and invokes the summary jurisdiction of the Bankruptcy Court to order such a return of the goods to the Trustee.

## RECOMMENDATIONS

I, therefore, recommend that this court approve the above findings and conclusions and pass its order disallowing the claims, and further that Claimants be ordered to pay the value of the goods to the Trustee in the following amounts:

(a) Claimant Gilbert Ross, Three Hundred Ninety Six ($396.00) Dollars;

(b) Claimant Pete N. Leventis, One Thousand One Hundred Thirty Seven and 69/100 ($1,137.69) Dollars;

(c) Claimant Kicidis Enterprises, Inc., Seven Hundred Twenty Four and 95/100 ($724.95) Dollars.

Respectfully submitted,

Robert W. Foster
SPECIAL MASTER IN
BANKRUPTCY

Columbia, South Carolina
October 4, 1968