13944

PEOPLE'S NATIONAL BANK OF GREENVILLE *ET AL.* v. GREENVILLE COUNTY *ET AL.*

(177 S. E., 369)

*Messrs. Haynsworth & Haynsworth,* for appellants,

*Messrs. Hicks & Johnston,* for appellant,

*Messrs. H. K. Townes,* for respondent,

November 14, 1934.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

The General Assembly chartered the Greenville Chamber of Commerce, whose avowed corporate purpose was "the promotion and advancement of the agricultural, manufacturing, commercial and civic interests of Greenville City and County."

February 2, 1923, the General Assembly passed an Act (33 St. at Large, p. 688), by which the property in the City of Greenville known as the Old Record Building, the land on which it stood, and certain land adjacent to it which had been conveyed to the City of Greenville, was turned over to the Greenville Chamber of Commerce for a term of years ending March 31, 2023. It was authorized by the Act to retain the Old Record Building or to erect a new building, and empowered to borrow such money as might be necessary for such purpose, issuing therefor notes and executing a mortgage "which shall be a lien upon said land and the present or any future building." It was further provided by the Act that the lien should not extend beyond March 31, 2023; at which time control of the property by the chamber of commerce should cease and the lot and the property should be the absolute property of Greenville County.

The validity of this Act for its announced purposes was challenged in an action brought by Judson W. Chapman, in his own right and as a taxpayer and citizen, against Greenville Chamber of Commerce, Greenville County, Greenville City, and others. The cause came on to be heard by Hon. T. J. Mauldin, who, in an able decree, sustained the validity of the Act, which decree was sustained on appeal by this Court. See *Chapman v. Greenville Chamber of Commerce*, 127 S. C., 173, 120 S. E., 584. Bonds were issued to the amount of $250,000.00, secured by mortgage of the premises, and the bonds were purchased by Southeastern Life In-

surance Company. The funds thus derived, and other moneys, were used to erect a ten-story building.

The Act provided that the building might be used by the Chamber of Commerce and its affiliated organizations free of rent, but that a rest room for the convenience of the people of Greenville County and an office for the County Demonstration Agent should be provided. It further provided that any space not needed for these purposes might be leased, and all surplus income, after paying for improvements, interest, insurance, and other proper charges, should be equally divided between the Chamber of Commerce and Greenville County.

In 1928-29 the Chamber of Commerce defaulted in the payment of certain matured bonds and interest, whereupon the People's National Bank of Greenville, as trustee, brought action to foreclose the mortgage. Pending the determination of this action, the County and the City of Greenville filed claims alleged to be due them for past due taxes, to wit, Greenville County in the sum of $4,926.50, and Greenville City in the sum of $3,452.20. Judgment of foreclosure was granted, the question of the claims for taxes being left open for further determination.

The Chamber of Commerce Building was sold sales day in November, 1930, at public sale, and bought by Southeastern Insurance Company for the sum of $100,000.00. Thereafter it entered a deficiency judgment for $155,376.-54.

The question of the validity of the claims of the county and city for taxes was referred to the Master for Greenville County, who, after taking testimony and hearing argument, filed a report which held that the building was not exempt from liability for taxes on the ground that it was used exclusively for public purposes. This report was confirmed by the Circuit Judge in a *pro forma* order. This appeal followed.

The main question made by the appeal is that this building is exempt from taxation because it is used for public

purposes. A subsidiary question is made, to wit, that if the building is taxable the taxes should be paid by the Chamber of Commerce and the County of Greenville.

It is argued in support of the proposition of exemption for the property that its status as property devoted to public uses is fixed by the opinion in the case of *Chapman v. Greenville Chamber of Commerce,* 127 S. C., 173, 120 S. E., 584, in which the decree of the Circuit Judge, which was affirmed by this Court, especially declared that the property was intended for public uses; and by the opinion of this Court in the case of *Antonakas v. Anderson Chamber of Commerce,* 130 S. C., 215, 126 S. E., 35, in which the same issues were involved. The purport and intent of these two opinions was to declare that the public uses of these two buildings, declared in the record, was sufficient to justify the General Asembly to authorize the placing of the properties in the hands of the respective chambers of commerce for stated periods, and of their being mortgaged. But neither of these cases holds that the properties are used exclusively for public purposes, and are not used for revenue. Nor does either of the cases hold that these properties are exempt from taxation.

Article 10, § 4, of the Constitution of 1895, declares that: "There shall be exempted from taxation all county, township and municipal property used exclusively for public purposes and not for revenue."

It is patent from an analysis of that language that the framers of the Constitution realized that public properties might, and would be, used for private purposes in addition to their public uses and they intended that in such cases the properties should not be exempt from taxation. The section further provides for the exemption of the property of "schools, colleges, * * * charitable institutions in the nature of asylums for the infirm, deaf and dumb, blind, * * * *except where the profits of such institutions are applied to private uses* * * * ; *but*

*property of associations and societies, although connected with charitable objects, shall not be exempt from State, county or municipal taxation."* (Italics added.)

Section 2578, Code 1932, contains a long list of properties which are exempt from taxation, but property of the nature here involved is not included.

It appears from the evidence that the Chamber of Commerce has occupied practically one floor of the building, and the county has occupied a part of the basement, and two rooms on the first floor. All the other space of a ten-story building has been rented at prices ranging from $25.00 to $35.00 per month. The average gross income per year is $32,000.00. After paying the operating expenses, the proceeds have been applied on the bonded debt. These bonds were to mature in thirty years after which, if they were paid, the proceeds from the property were to be divided equally between the Chamber of Commerce and Greenville County. If the Chamber of Commerce had not been caught in the cataclysm of the depression which wrecked so many worthy enterprises, and had met its bonded obligations until the bonds were retired, it and the County of Greenville would have received a very handsome annual income from this property for a period of about sixty years.

It is manifest that public use was not the paramount intendment, nor was it the actual usage of the building. Revenue was the main purpose.

In the case of *Haesloop v. City Council of Charleston,* 123 S. C., 272, 115 S. E., 596, the City of Charleston conveyed by way of donation a lot of land for the erection of Fort Sumter Tourist Hotel. It was held that the benefit to the public of such an hotel was a sufficient "public use" to justify the conveyance by the city, but nowhere was it contended that the property was exempt from taxation. On the contrary, the increased value of the adjacent properties, and the value of the hotel property as taxable values, whereby the interests of the city and the public were promoted, was held to be a ground in support of the gift.

We do not think that the case of *Jones v. City of Camden,* 44 S. C., 319, 23 S. E., 141, 142, 51 Am. St. Rep., 819, sustains the appellants' claim of exemption from taxation in this case. The ultimate of that decision was: "Besides, it seems to us that it is plain that the main purpose for which the building was erected was to supply the needs of the municipal corporation, and the fact that portions of the building not now necesary for public purposes are appropriated to other purposes, from which a small income is derived, not sufficient to meet the insurance on the building and the interest on the money expended in its erection, does not deprive it of its character as a public building erected and used for municipal purposes."

In the present case it is patent that the building was erected primarily for the revenue derivable from the rental of some eight of the ten stories contained in it.

In his excellent report the Master refers to the annotation to the case of *People ex rel. Baldwin v. Jessaminet Withers Home,* 312 Ill., 136, 143 N. E., 414, 34 A. L. R., 628, where is found an exhaustive consideration of this question of exemption from taxation. We concur with him that weight of authority is against the claim presented in the present case.

In the main case, the Jessamine Withers Home was a charitable institution for old and indigent women. It was exempt from taxation if used for charitable purposes only; it owned certain farm lands which were rented. The Illinois court denied the claim of exemption. The case cites the case of *First M. E. Church v. Chicago,* 26 Ill., 482. The church owned a four-story building; the lower stories and a basement were rented for business purposes; the upper stories were used exclusively for religious purposes of the church; the rent and income were used solely for the religious purposes of the church. The exemption was denied.

"Nor is the property of a Chamber of Commerce exempt from taxation as property owned by a corporation

operated exclusively for religious, charitable, scientific, or educational purposes, although it ministers to charity and gives instruction of an educational nature along certain lines, its primary object being to promote the business and commercial interests of the city in which it is. *Memphis Chamber of Commerce v. Memphis* (1921), 144 Tenn., 291, 232 S. W., 73." 34 A. L. R., 647, note.

We conclude that the property involved in this case is not exempt from taxation.

Who should pay the taxes?

■ The property is liable and the taxes are a lien thereon. By agreement it is settled that if the insurance company be held liable for the taxes, they will be paid out of the proceeds of sale. We think this should be done. It is true that the taxes accumulated during the years when the chamber of commerce had exclusive control of the property. If the appellant conceives that the Chamber of Commerce should reimburse it for the taxes, it has its right of action. It is not incumbent on the Court to determine that question now.

The judgment of the lower Court is affirmed.

MESSRS. JUSTICES STABLER AND CARTER, and MR. C. T. GRAYDON, ACTING ASSOCIATE JUSTICE, concur.