STATE *EX REL.* CITY COUNCIL OF SPARTANBURG v. THE SPARTANBURG, CLIFTON AND GLENDALE R. R. CO.

A CORPORATION is not *ipso facto* dissolved by an act of *nonuse* or *misuse*, which is a *cause* of forfeiture; but in such case, the forfeiture of its corporate franchise must be judicially determined.

Before GARY, J., Spartanburg, November, 1896. Affirmed.

Action by the State *ex relatione* the City Council of Spartanburg against The Spartanburg, Clifton and Glendale Railroad Company and The Ætna Light and Power Company, for the purpose of annulling the charter of the former. From an order permitting the plaintiff to amend its sum-

mons and complaint by making the latter defendant company a party defendant, and adding certain allegations therefor to the complaint, and from an order refusing the motion of the latter company to set aside the service of the amended summons and complaint on it, the defendant appeal.

*Messrs. Hydrick & Wilson*, for appellants, cite: 21 Wall., 609; 144 U. S., 640; 45 S. C., 413, 464; 22 S. C., 332.

*Messrs. R. K. Carson* and *Duncan & Sanders*, contra. The latter cite: 20 Stat., 1188; Code, 142; 22 S. C., 432.

Nov. 15, 1897. The opinion of the Court was delivered by

MR. JUSTICE JONES. This action, commenced in June, 1893, was brought to obtain a decree of forfeiture of the charter of the Spartanburg, Clifton and Glendale Railroad Company. The defendant answered, and the case was duly docketed for trial. Nothing seems to have been done in the case until in October, 1896, when the plaintiff, alleging that the Ætna L. & P. Co. claimed to be possessed of, or to have some interest in, the franchise of the S. C. & G. R. R. Co., moved to amend by making the latter named company a party defendant. The Ætna L. & P. Company did not appear in resistance of this motion, but the attorneys who had answered for the S. C. & G. R. R. Co., appeared and resisted the motion, claiming that the S. C. & G. R. R. Co. was defunct, by reason of the forfeiture of its charter, and that the action had thereby abated, submitting an affidavit to the effect that said company had failed to complete its railroad to Glendale and Clifton, Nos. 1 and 2, within three years from the passage of the act of incorporation, as required by the eighth section of said act.

The Circuit Judge held that the defendant had the right to exercise its charter privileges or franchise until failure to complete its road within three years from the passage of the act of incorporation is judicially determined, and this action being for that purpose, he declined to determine that

question on the motion.    He, therefore, granted the motion
to amend.    After service of the amended summons and com-
plaint, the Ætna L. & P. Co. moved to set aside the service
on the ground that the original action had abated by the
forfeiture of the charter of the S. C. & G. R. R. Co.    This
motion was refused.

It is clear that the judgment of the Circuit Court must
be affirmed.    It is a well established doctrine in the courts
of the United States, and of nearly every State in the Union,
including our own, that a corporation is not *ipso facto* dis-
solved by an act of nonuse or misuse, which is a cause of
forfeiture, and that the franchise remains in force until the
forfeiture is declared in a direct judicial proceeding brought
by the State against the corporation for that purpose.    Mr.
A. C. Freeman, in an able and exhaustive note on the sub-
ject of forfeiture of corporate franchises, in *State* v. *Atchison
etc. R. R. Co.*, 8 Am. St. Rep., 179, collects the authorities
.in support of this doctrine from text books, from decisions
of the United States Court, and of about thirty States in
the Union.    See, also, note in 5 Am. St. Rep., 803.

In our own State the same doctrine has been established.
In the case of *State* v. *Bank of Charleston*, 2 McMullan's
Law, 439, the Court held that forfeiture of the charter of
a corporation is incurred from the time of the commission
of the act for which a judgment of forfeiture may be en-
tered, but the corporation continues *de facto*, notwithstand-
ing, until judgment of forfeiture is pronounced.    In the
case of *State* v. *Bank of South Carolina*, 1 Spears, *433,
while the Court was nearly evenly divided on the question
whether a general refusal by an incorporated bank to re-
deem its issues and deposits in gold and silver coin is *per
se* a sufficient cause of forfeiture of its charter, there was no
difference of opinion on the general doctrine above an-
nounced.    See remarks of Chancellor Dunkin, at page *516.
This, it will be seen, is not a case in which the charter is
alleged to be forfeited by the expiration of the term fixed
in the charter for corporate existence, but the alleged cause

for forfeiture is the failure to do something prescribed in the charter.   We do not doubt, furthermore, that the legislature, where the right to repeal the charter is reserved, may, by clear and unmistakable language, so limit the franchise that it shall expire, *ipso facto*, on the happening of a prescribed event or contingency; but, as said in 2 Morawetz on Cor., 1006, "a distinction must, however, be observed between modes limiting the existence of a corporation until the happening of a prescribed event, and the provision making the happening of an event a cause for declaring a forfeiture of the charter as upon condition subsequent.   In the former case, the charter will expire of itself by its own limitation; but in the latter case, a judicial determination of the ground of forfeiture is required before the corporation becomes dissolved."   In the last analysis, the question is one of legislative intent.   If the legislative intent is clearly manifest that a corporation, on the happening of a specified event or contingency, should, *ipso facto*, be dissolved, *eo instanti*, without judicial determination of the cause of forfeiture, the courts, if the question should be presented, could only declare the law as written.   But in view of the fact that to be a corporation is a franchise upon which property rights may depend; in view of the great importance of having a record of the dissolution of the corporation for purposes of evidence; and in view of the grave consequences that would likely follow such dissolutions, a court, in the absence of unmistakable terms in the act of incorporation working a dissolution *eo instanti*, both *de jure* and *de facto*, will assume the legislative intent to be merely to prescribe a cause of forfeiture, leaving the courts to judicially determine and declare the existence of the cause of forfeiture and dissolve the corporation.   Sec. 8 of the act in question (20 Stat., 1188,) provides: "That all powers, rights, privileges, and immunities hereby granted shall cease, determine, and be void, unless said company shall, within six months from the passage of this act, build, equip, and put in permanent operation at least one-half mile

of said railroad, and unless it shall complete said railroad to Glendale and Clifton, Nos. 1 and 2, within three years from the passage of this act." Observing the distinction to which attention was called above, and construing the act in the light of the principles above announced, we think the happening of the specified event or contingency—failure to complete the railroad as prescribed—was merely a cause of forfeiture, and not an express limitation of the existence of the corporation until the happening of such event or contingency. The loss of the franchise was the penalty to attach for failure to perform the specified corporate duty.

In the case of *Ahrens* v. *State Bank*, 3 S. C., 405, reaffirmed in *Shand* v. *Gage*, 9 S. C., 196, under an act providing that all incorporated banks that shall continue to refuse to pay their bills of credit until the 1st day of December, 1869, "shall forfeit all corporate rights and privileges, and are forbidden to transact any business as a banking institution," the Court reasoned that this act did not operate as a repeal of the bank charter; that the loss of corporate powers was intended as a penalty, which the State alone had the right to enforce; that the act was not self-executing, and that there must be a direct judicial proceeding to ascertain the grounds of forfeiture. In that case, on an *ex parte* application showing failure of the bank to comply with the above requirement of the act, a receiver for the bank had been appointed as required by the act, but the Court held that this was not such a judicial proceeding as can operate to dissolve the corporation. In the case of *Shand* v. *Gage*, 9 S. C., 196, the Court construed an act chartering the Cotton Planters' Loan Association (13 Stat., 41), which requires the president and treasurer to transmit a certain report every month, and in case of failure to do so for two consecutive months, provided that "it shall be the duty of the comptroller general to report the fact to the governor, who shall forthwith issue his proclamation, declaring the charter of such association forfeited." The Court held that the governor's proclamation declaring the corporation dissolved by forfeit-

ure of its charter did not of itself have that effect, and that the cause of forfeiture must first be judicially determined.

We think, therefore, the Circuit Judge did not err in declining to declare the dissolution of the defendant corporation on a mere motion on the affidavit. The cause of forfeiture not having yet been judicially determined, the action, of course, cannot be deemed abated. Proceedings to annul the charter of a corporation is now provided for in the Code of Civil Procedure, beginning with section 424. It would be inconsistent with the scheme therein provided that a forfeiture be declared on a mere motion, or that a cause of forfeiture should *ipso facto* dissolve the corporation.

The judgment of the Circuit Court is affirmed.