HUGUENOT MILLS v. JEMPSON & CO.

1. CORPORATIONS—PARTNERSHIP—ULTRA VIRES.—While the stockholders or the State may object to the use of corporate funds by its officers in a partnership with an individual as *ultra vires,* still such objection cannot be raised by way of defense against the purchase contract of goods owned by the corporation and sold by the partnership, and when the corporation acquires by assignment all rights of its copartner in such sale, it alone may collect the purchase money of the buyer.

2. CONTRACT—DAMAGES.—The seller of goods by executory contract to be delivered at time to be fixed by buyer, may maintain an action for damages for breach of the contract, and the measure of damages is the difference between the contract price and the market price at the time the buyer refuses to accept.

3. EVIDENCE—LETTERS—STATUTE OF FRAUDS.—CONTRACT evidenced by a bill of goods and letter in response thereto, is not within the statute of frauds.

4. IBID.—PAROL—PARTNERSHIP—LETTERS.—It is proper to show by parol that a letter signed by an individual was written for a partnership of which the writer was a member.

5. IBID.—PARTNERSHIP—PRINCIPAL AND AGENT.—The fact that an individual was purchasing agent for others, is not competent on the question whether he acted in one instance for the firm of which he was a member, in absence of evidence tending to notify the seller that he was also purchasing agent for others.

Before PURDY, J., Greenville, June, 1903.    Affirmed.

Action by Huguenot Mills against George F. Jempson & Co.    From judgment for plaintiff, defendants appeal.

*Messrs. McCullough & McSwain,* for appellant.    *Mr. McCullough* cites: *Proposed amendment adds nothing to complaint:* 28 Am. Dec., 650; 6 Ency., 358; 22 Ency., 53; 17 Ency., 683; 2 Hill Ch., 556.    *And plaintiff must recover through partnership:* 20 S. C., 464; 29 S. C., 63.    *No copartnership can exist between a corporation and an individual:* Clark on Corp., 150; 7 Ency., 794; Mechem on Part., sec. 26; 22 Ency., 70; 21 How., 441; 131 U. S., 384; 8 S.

W., 397. *As to effect of resale without notice to purchaser:*
21 Ency., 595, 597.

*Messrs. Haynsworth, Parker & Patterson,* contra, cite:
*As to right of defendants to raise question of ultra vires:*
Cook on Stock., 2 ed., par. 677; 61 N. E., 821; 13 N. J. Eq.,
302; 5 Thomp. on Corp., sec. 5838; 1 Rich., 288; 98 U. S.,
621; 112 U. S., 439; 103 U. S., 99; Noyes on Intercorp.
Rel., 533, 534, 537; 184 U. S., 540. *Delivery and accept-
ance of part of goods take case out of statute of frauds:* 1
McC., 289; 1 East., 192; 8 Ency., 1 ed., 732.

March 29, 1904.   The opinion of the Court was deliv-
ered by

MR. JUSTICE WOODS.   The supplemental and amended
complaint alleges that at the times therein mentioned, the
plaintiff, a corporation, and Herbert Rountree were "part-
ners (or associates in business) under the name of the Green-
ville Commission Company;" that in November, 1900, the
defendants agreed to buy from the plaintiff and Rountree, as
such company, eighty bales of goods known as Granger
Plaids, at three and three-fourths cents per yard, payable
within ten days, the goods to be billed up and held for ship-
ping instructions to be given by the defendants; that thirty
bales were ordered out and paid for, and the defendants
directed the remaining fifty bales to be billed to Gus Blas
Dry Goods Company, of Little Rock, Arkansas, but both
that company and the defendants have declined to receive the
goods or pay for them; that after the contract was made, the
market price of the goods declined greatly in value and the
sellers, as the Greenville Commision Company, was damaged
by the defendants' breach of contract to the amount of $500;
that since the commencement of the action, Rountree has
assigned all his interest in the claim for damages to the
plaintiff.

The defendants, in their answer, deny all the allegations of
the complaint; allege that the plaintiff, being a corporation,

could not enter into a copartnership and had no power to contract or be contracted with in that capacity; and allege further, that the contract falls·within the statute of frauds, being for the sale of merchandise at a greater price than $50, and not evidenced by any note or memorandum in writing, signed by the parties to be charged or their agents.

At the trial, the defendants demurred orally on "the ground that it (the complaint) does not state facts sufficient to constitute a cause of action, in that the plaintiff sues as assignee of the Greenville Commission Company, an alleged partnership existing between the Huguenot Mills, a corporation chartered under the laws of the State of South Carolina, and one Herbert Rountree, and under the charter of the Huguenot Mills and the law, a partnership cannot exist between the said Huguenot Mills and the said Herbert Rountree, and the alleged contract was, therefore, *ultra vires.*"

In the first exception, the defendants allege that the Circuit Judge erred in overruling the demurrer.

The general proposition is well established that a corporation cannot enter into a valid partnership agreement. This implies that such an agreement made by the corporation, even with the assent of all the stockholders, may be annulled at the instance of the State; it implies that an agreement made by the officers may be annulled or disregarded by the stockholders, and that the officers who embark the corporate funds in such an enterprise would be liable for losses resulting to the corporation as for a breach of trust; it implies that the stockholders could require the officers to take a conveyance from the corporation of its interest in property acquired by an attempted partnership of this kind and restore the funds used in its purchase. But it does not imply that the corporation does not acquire, as against the outside world, part ownership of property bought in part with corporate funds in the progress of an attempted partnership business. An incident of ownership is the power of sale, and the power to sell implies the power to hold those

who agree to buy to perform their agreement or pay damages for its breach.

To illustrate, it cannot be doubted, if, in this instance, the stockholders had brought an action to have the business closed up as *ultra vires,* the Court would have ordered the assets sold and the contracts for purchases from the concern enforced by suit for the benefit of the corporation. To such suits it would have been idle for those who had purchased or contracted to purchase, to deny the corporate right to own and sell the goods.

If this were a suit in a partnership name, the defendants' demurrer would stand on a very different foundation, for the question would then be whether the joint owners could recover when they had sold as an alleged partnership. Even then we think the defendants could not deny the validity of their obligation on that ground. 5 Thompson on Corporations, sec. 5838; *Connolly* v. *Union Pipe Co.,* 184 U. S., 544; *Bank* v. *Hammond,* 1 Rich., 288; *Harvester Co.* v. *Donahue,* 12 N. W., 354 (Minn.).

In the case really presented, the corporation sues alone in its own right and as assignee of Rountree. The defendants are charged with knowledge that the plaintiff could not enter into a legal partnership (*Pearce* v. *R. R. Co.,* 62 U. S., 441), and that in the contract to purchase they were dealing with the plaintiff and Rountree as joint owners of the property, who as such had a right to sell it. For this reason they cannot now dispute the validity of the contract of purchase or the liabilities which fell upon them when they repudiated it. The demurrer was, therefore, properly overruled.

Substantially the same question was made by a motion for nonsuit and in requests to charge. It follows that the first exception as to the demurrer, the first exception as to the refusal to grant a nonsuit, and the first, second, fourth and fifth exceptions to the charge, cannot be sustained.

The defendants' next position is that the motion for nonsuit should have been granted, because the testimony showed that there had been an actual sale and symbolical delivery,

and, therefore, the plaintiff, holding the goods only as bailee for the defendants, could not sue for damages for breach of the contract, but only for the price the purchasers agreed to pay. The complaint is for breach of an executory agreement to purchase. It is true, that Rountree testifies he regarded the goods as belonging to the defendants as soon as he made the contract of sale, but his mere opinion can have no weight in fixing the nature of the contract. It is perfectly clear from the letters of buyer and seller that the specific patterns and the particular pieces were not fixed by the contract of sale, but were to be selected from the samples by the customer of the purchaser, and after such selection were to be taken from the warehouse stock and shipped to such customer. The contract, if any, was, therefore, executory. 24 Am. & Eng. Ency., 1054. Hence, when the purchaser refused to receive, the seller could retain the goods and sue for damages. 24 Am. & Eng. Ency., 1113; *Millar* v. *Hilliard,* Cheves, 153.

This being an executory contract, and the seller having a right to retain the goods and account for the market price at the time of the breach by the purchaser, the seller was under no obligation to actually resell. He did not resell at the time of the breach and is not claiming damages for the difference between the price obtained at a resale and the contract price, but for the difference between the contract price and the market price at the date of refusal. The law as to resale, therefore, has no application.

The measure of the seller's damages for breach of an executory contract for the sale of goods, is the difference between the contract price and the market price at the time the goods ought to have been accepted by the purchaser. *Stack* v. *R. R.,* 10 S. C., 97; *Millar* v. *Hilliard, supra.*

The reason for applying this measure of damage is that the seller has the right to put the goods on the market after the contract is broken, and obtain the market price. 2 Benjamin on Sales, sec. 1117. But he cannot sell until the date for acceptance has passed, because until that time the purchaser

has the right to take the goods. By the same reasoning, where the exact time for delivery is to be afterward fixed by the purchasers, the measure of damages is the difference between the contract price and the market value at the date of refusal to receive; for such refusal necessarily implies a refusal to fix a time, and there is then a complete breach of the contract. In refusing the nonsuit, and in charging as to the measure of damages, the Circuit Judge took the correct view of the law on the subject.

The evidence as to the difference between the contract price and the market value at the date of purchaser's refusal to accept, might well have been more definite, but it was sufficient to sustain a verdict. Rountree testified: "The market weakened immediately after I made the sale, and continued to decline. It went down from four cents to three and three-eighths, went down as low as three cents. The day I made the trade with George F. Jempson & Co., it was four cents." The defendants offered no testimony to rebut this statement, and we think the jury could well infer that the witness meant the decline to three cents took place immediately after the contract of sale. There was, therefore, no error of law in refusing the motion for a new trial.

The executory contract was evidenced not only by the conversation between Jempson and Rountree, but by the letter of Jempson, written in response to the bill sent to Jempson & Co. by the Greenville Commission Co. The contract is, therefore, not obnoxious to the statute of frauds. It is true, the letters were signed G. F. Jempson and not George F. Jempson & Co., but it was competent to show by parol that Jempson was acting for the firm in signing the letters. *Bulwinkle* v. *Cramer & Blohme,* 27 S. C., 364, 3 S. E., 776; Benjamin on Sales, p. 252. The issue as to whether he was acting for himself or the firm of Jempson & Co. in making the contract, was fairly submitted to the jury.

There was no error in excluding the testimony of George F. Jempson as to his private arrangements with the

Gus Blas Dry Goods Co. and other customers, of which the plaintiff had no notice.

George F. Jempson, as one of the partners of Jempson & Co., was empowered to contract for the firm; the question was whether he so acted in this matter as to justify the sellers in believing they were contracting with the firm. If he did, the partnership would be bound. The controlling inquiry is, what intention did Jempson express to the sellers by words and acts, not what his unexpressed will was. The fact that as an individual, separate from his partnership relation, Jempson was a purchasing agent for others, might have some bearing in ascertaining whether he, in his inner consciousness, had an intention to contract for the firm or as an individual purchasing agent; but there being no evidence that the sellers knew he ever acted in the latter capacity, proof that he did so act could have no effect in ascertaining whether the sellers had a right to infer from his words and acts that he intended to contract for the firm of which he was a member.

All the exceptions are overruled, and the judgment of the Circuit Court affirmed.