16256

TEXTILE HALL CORPORATION v. HILL

(54 S. E. (2d) 809)

</div>

Messrs. *John M. Daniel, Attorney General, and T. C.*
*Callison, Assistant Attorney General,* of Columbia, *and Benj.*
*A. Bolt, A. C. Mann and J. D. Todd, Jr.,* of Greenville, *for*
*Appellant,*

*Mr. W. G. Sirrine,* of Greenville, *for Respondent,*

*Messrs. John M. Daniel, Attorney General, and T. C. Callison, Asst. Attorney General,* of Columbia, *and Benj. A. Bolt, A. C. Mann and J. D. Todd, Jr.,* of Greenville, *for Appellant, in reply,*

August 18, 1949.

BAKER, Chief Justice.

In this suit brought by Textile Hall Corporation against the Treasurer of Greenville County the former is seeking to recover $750.02 as the amount of taxes (including penalties) levied upon the property of Textile Hall Corporation for the year 1944, and paid by the Corporation under protest.

The foundation of the suit is the claim of Textile Hall Corporation that its real estate, with exceptions that need not be detailed here, is exempt from taxation.

This is the third time that this Court has been called upon to dispose of legal questions arising out of the conflict between Textile Hall Corporation and the taxing authorities on the question whether the real estate of the corporation is exempt from taxation. In neither of the two preceding cases, however, did this Court find it necessary or proper to deal with the questions of constitutional and statutory law that are now squarely presented for decision, and the disposition of which will settle the issue as to whether the real estate

of the Corporation is tax exempt. See *State ex rel. Daniel, Attorney General v. Textile Hall Corporation,* 185 S. C. 406, 194 S. E. 66; *Textile Hall Corporation v. Riddle,* 207 S. C. 291, 35 S. E. (2d) 701.

For convenience the Textile Hall Corporation will hereinafter be referred to as the Corporation.

The foundation of the suit is the claim of the Corporation that it is an eleemosynary corporation within the provisions of sections 8158 *et seq.* of the Code, and that as such, under the applicable constitutional provisions, it is exempt from the payment of property taxes. As further supporting this claim of exemption the respondent relies upon a statute enacted in 1936, Acts 1936, 39 Stat. at Large, page 1666, and now incorporated in the Code as Section 2578, subsection 54. This statute purports to exempt the Corporation, by name, from the payment of property taxes.

The appellant demurred to the complaint on three broad grounds as follows:

(1) That the 1936 Act is invalid in that it violates the provisions of Article III, Sec. 34, subdivisions 3 and 9 of the Constitution of South Carolina; in that it is a special law where a general law could be made to apply; it is an attempt to amend or extend the charter powers of the Corporation; and it grants special charter or corporate rights to the Corporation in conflict with those permitted by the law of the State.

(2) The Act is unconstitutional in that it violates Sections 1 and 4 of Article X of the Constitution, by exempting property other than that mentioned in the Constitution as exempt from taxation and discriminates between the respondent and other persons in the levy of taxes.

(3) A further constitutional defect is alleged in that the property of the respondent is not alleged to be the character of property for which the Constitution specially provides exemption.

In an able order made by Honorable L. D. Lide, Circuit Judge, the demurrer was overruled and permission was given the defendant to answer. From this order an appeal was duly noticed. By stipulation of counsel the prosecution of the appeal was held in abeyance until the final disposition of the cause. The defendant thereupon answered, setting up in the main grounds upon which the appellant's demurrer was based, and also relying upon factual matter relating to the nature and scope of the operations of the Corporation.

There was a motion to strike the answer and a demurrer to the same, both of which were overruled.

By stipulation of counsel, made without reservation, the case was referred to the Master of Greenville County to take the testimony and to report on the law as well as the facts. This the Master did. He concluded that the Corporation was not entitled to the exemption claimed. Upon exceptions to this order, Judge Griffith heard the case. He disapproved the recommendations of the Master and held that the Corporation was entitled to the exemption claimed by it. He accordingly ordered judgment for the Corporation for the amount prayed.

It is inferable from the record that prior to 1923, the respondent was a business corporation. In that year it surrendered its charter and cancelled all of the outstanding capital stock, and was reincorporated under the provisions of law relating to non-stock eleemosynary corporations. Its charter expresses the purposes of its organization thus : to "hold expositions for agricultural and mechanical products; for the encouragement and development of spinning, weaving, the invention and manufacture of machines and devices pertaining thereto; for the encouragement and development of homes, the manufacture and sale of and use of pure foods, and the knowledge and use of sanitary methods and appliances; to hold meetings for the advancement of religion, literature, science and art; to encourage and promote the cause of education; to be a business league, no part of net

earnings of which shall inure to the benefit of any private stockholder or individual; and to be a civic league operated exclusively for the promotion of social welfare; and in addition to exercise all powers permitted under the laws of South Carolina or any amendments thereto."

The statute under which this charter was obtained (Code, Sections 8158 *et seq.*) contains nothing on the subject of the exemption of an eleemosynary corporation from the payment of taxes.

In the preamble to the 1936 Act above referred to, the Corporation is described as an "eleemosynary society and not used for the purposes of profit * * *" The Act thereupon proceeds to rebate "all taxes heretofore assessed against said society or institution and which have not been paid * * * and the said Textile Hall Corporation is hereafter exempt from taxes by the State, County or municipality." Acts 1936, approved May 27, 1936, 39 Stat. at Large, page 1666; Code Section 2578(54).

As the complaint sets forth, notwithstanding the terms of the 1936 Act, the appellant County Auditor of Greenville County placed the property of the Corporation upon the tax books for the year 1944. The Corporation protested this action, but the appellant nevertheless levied the taxes, and the same not being paid, thereafter imposed penalties. It having been already decided by this Court, *Textile Hall Corporation v. Riddle, supra,* that an injunction would not lie to restrain the appellant from imposing and enforcing the payment of the taxes and penalties so levied, the Corporation paid the same, and in this action seeks to recover the amount so paid.

As already stated, the Corporation was formed under the provisions of Sections 8158 *et seq.* of the Code. Section 8158 provides that certificates of incorporation may be issued "to any church, college, school lodge, society, company or other association, having no capital stock divided into shares, but holding or desiring to *hold property in common* for religious,

educational, social, fraternal, charitable or *eleemosynary* purposes other than for the insurance of life, health, accident or property." (Emphasis added.)

Such corporations are empowered, among other things, to make contracts, to loan money, to acquire and transfer property, both real and personal, etc. Section 8161. They may also borrow money to carry out the objects of their charters, and secure the evidences of debt by mortgage on both real and personal property (Ibid).

No provision is made for the disposition of the property of such corporations upon dissolution, but under well settled principles of law the assets of the corporation would in such cases be divisible among the members of the organization. *McAlhany v. Murray,* 89 S. C. 440, 71 S. E. 1025, 35 L. R. A., N. S., 895, Ann. Cas. 1913A, 1008; 14 C. J. S., Charities, § 77, page 557.

In effect, this also is the rule declared in Section 8158 of the Code where, as shown above, it is declared that an eleemosynary corporation may be formed to enable persons to acquire and *hold property in common* for the corporate purposes.

Having in mind the above stated background of the incorporation of the Corporation, we proceed to a consideration of the functions actually performed by it and of the character of business or transactions in which it has been engaged.

The record clearly shows that the Corporation was organized and has been operated primarily for the purpose of holding biannual expositions dealing with the textile industry. These expositions have not been on a local or even a statewide or regional basis. To a considerable extent they appear to have been national in scope. And the greater part of the income of the Corporation has come from such expositions.

For example, in 1937 the net income from this source was $50,410.38, out of a gross income of over $71,000.00.

In 1939, out of a gross income of $74,154.89 for the textile show and $2,759.48 from rentals of space for other purposes, there was a net profit of $36,274.13. In 1941, out of a gross income of $81,751.74 for the textile show and other income of $3,487.51, there was a net income of $40,-582.60.

No textile shows were held during the years 1942-1945, inclusive, but in 1946 the Corporation appears to have had some arrangement whereby it received from some other organization which took over the textile show, the same profit that was made on it in 1941.

Other than the income received from the holding of the textile expositions, the income of the Corporation has been small. It was derived from rentals of portions of the buildings owned by the Corporation for various purposes, such as the holding of horse shows, Chamber of Commerce meetings, evangelistic meetings, basket ball games, community chest meetings, boxing tournaments, concerts and various other kinds of meetings to which the public or special groups were invited or admitted. With minor exceptions, rentals yielding some profit to the Corporation were charged for such uses of the corporate property. Usually such rentals involved some profit to the Corporation.

It is an admitted fact from the record that none of the income received by the Corporation was used for charitable, educational or religious purposes, or indeed for the promotion of any of the other specific purposes expressed in the charter, except such purposes as may be deemed to have been promoted by the general usage of the Corporation's property as indicated above.

The income of the Corporation was absorbed in the development, enlargement, improvement and maintenance of its property, in the purchase of adjoining property, and in the discharge of obligations incurred in the acquisition of land and in the erection of buildings.

The Corporation has large outstanding obligations. About $14,000.00 of indebtedness is represented by a purchase money mortgage covering additional land acquired by the Corporation. Something like $67,000 of first and second mortgage bonds are outstanding, and upon which interest is being paid, partly at the rate of 6% and partly at the rate of 7%. And there are still outstanding over $60,000.00 of interest bearing "building certificates" that were issued to the stockholders of the original corporation in consideration of the surrender by the stockholders of the Corporation of the outstanding shares of capital stock. None of the interest on this last mentioned obligation has been paid.

The Corporation has about twenty directors. The Board is self-perpetuating. None of the directors receive compensation for their services, and all but one of them are identified with the textile industry. The director thus excepted appears to be a general contractor whose work includes building and related operations in the textile field.

The principal officers of the Corporation, and the only ones who receive any salary, are the President and the Secretary. The President received a salary of $6,000.00 per year until a few years ago, when it was increased to $6,600.00 per year. The Secretary received $2,080.00 per year until a few years ago, when her salary was increased to $2,496.00.

Thus it is perceived that whether the *objects* of the Corporation are deemed to be eleemosynary or commercial or industrial in character, such objects were to be pursued through an association of persons that would operate the enterprise by owning, and exploiting real estate to carry out its primary object of conducting expositions for the advancement of the interests of the textile industry, and that has been in fact the history of the Corporation. Such benefits as might be derived by the public from these activities, and from the rental of the corporate property for other purposes, must be deemed to be purely incidental. The corporation had and has no assets other than the property acquired and admin-

istered for the purposes above set forth, and thus was and is dependent primarily upon the income derived from the textile expositions to pay for its property, and to maintain and expand the same.

The aforestated considerations are to be coupled with the joint and private ownership of the assets of the Corporation, payment for which finally will come out of the earnings of the Corporation.

There is no foundation for the recital in the 1936 statute above referred to that "if operated on the present scale (the property) will eventually belong to the citizens of this state without debt, and may then be taxed or its income otherwise turned over to the City, County and State without restriction."

But even if we were to eliminate from consideration the purely private aspects of the project in question, and even if we give full effect to respondent's characterization of the enterprise as one devoted to public purposes; or more than that, even if we were to characterize the Corporation, as the respondent does, as an eleemosynary society, that would avail the respondent nothing in dealing with the primary question presented in this case. We find nothing in the Constitution or statutes of this State which purports to grant or to permit the grant by legislation of an exemption from property taxation to corporations of the character indicated.

A much stronger case for the character of exemption claimed by the Corporation was presented in the case of *People's National Bank v. Greenville County,* 174 S. C. 256, 177 S. E. 369. In that case the corporation seeking an exemption for taxes was chartered by the General Assembly as the Greenville Chamber of Commerce for the stated corporate purposes of the "promotion and advancement of the agricultural, manufacturing, commercial and civic interests of Greenville City and County." Under a subsequent Act of the General Assembly certain property owned by the City of Greenville was turned over to the corporation for a long

term of years. The corporation was empowered to erect a new building and to borrow money for that purpose. Upon the expiration of the term of the grant, the property was to become the absolute property of Greenville County.

The Act vesting the property in the Greenville Chamber of Commerce provided that the building to be erected thereon might be used by the corporation and its affiliated organizations free of rent, but that a rest room was to be provided for the convenience of the people of the County, and an office for the County Demonstration Agent also was to be provided.

A further provision of the statute is that any space not needed for the above stated purposes might be leased, and that all surplus income should be equally divided between the Chamber of Commerce and Greenville County.

The main question in the case as whether the property above referred to "is exempt from taxation because it is used for public purposes."

In the case cited, as here, a substantial amount of annual income was obtained out of the property, and the proceeds were applied on the mortgage indebtedness incurred by it.

As the Court said : "It is manifest that public use was not the paramount intendment, nor was it the actual usage of the building. Revenue was the main purpose."

That case would have to be overruled to afford the respondent any relief in the present case, and there has been no application to the Court for leave to question the correctness of the decision there made.

Is the result above indicated affected by the above mentioned 1936 statute? In other words, does such statute violate the constitutional limitations governing in the premises? That is the primary question involved in this case.

The controlling constitutional provisions are contained in Article X, Sections 1 and 4 of the Constitution. Section 1

provides: "The General Assembly shall provide by law for a uniform and equal rate of assessment and taxation, and shall prescribe regulations to secure a just valuation for taxation of all property, real, personal and possessory, except mines and mining claims, the products of which alone shall be taxed; and also excepting such property as may be exempted by law for *municipal, educational, literary, scientific, religious or charitable purposes*  *  *  *." (Emphasis added.)

In the light of the facts above related we are unable to find in this constitutional provision any authority for the 1936 statute above referred to. The holding of expositions to advance the interests of an industry, however beneficial in the public interests the industry may be, can hardly be said to be an educational, literary or scientific activity in the usual acceptation of those terms. While there may be educational and scientific benefits in the holding of such expositions, and in the pursuit of incidental activities which assist in meeting operational expenses and are conducted for that purpose alone, it would be supplementing the language of the Constitution to hold that benefits of such character enable the Corporation to be classified as having educational or scientific purposes.

A theatrical enterprise operated under rules and regulations which limited the staging or picturization of events and stories with an educational or scientific flavor, or otherwise purporting to advance the public interests in one or more fields, would hardly be said to have an educational or scientific purpose in the sense now under discussion. The fact that such an enterprise is operated in such manner as to yield no profit except to pay salaries to the officers in charge and to pay the cost of the theatre, would hardly be deemed to bring it within the terms of the constitutional exemption, and we think that on the same principle an eleemosynary corporation, if the respondent is such, is with-

out legal standing to claim the tax exemption now in question

Constitutional and statutory language creating exemptions from taxation will not be strained or liberally construed in favor of the taxpayer claiming the exemption. He must clearly bring himself within the constitutional or statutory language upon which he relies.

And of course when the General Assembly undertakes, as it did in the 1936 statute above referred to, to legislate within the scope of a constitutional source of power, it must clearly appear that the statute is a fair application of the constitutional language.

When the matter came before Judge Lide on a demurrer to the complaint, that able jurist had before him only the language of the complaint and the terms of the 1936 statute. As the matter was presented by the complaint, with a full enumeration of the corporate powers, and an allegation that the corporate purposes thus expressed "have been and are being followed and executed for the public benefit," a situation was presented very different from that disclosed by the testimony. Such testimony, coming largely from the Corporation itself, is a complete negation of the above quoted language of the complaint, and discloses not only the purely private character and purposes of the Corporation, but also the absence of factual support for the recitals in the 1936 Act that are pertinent in the present discussion. Under these circumstances, we are constrained to hold that the 1936 statute is not a valid exercise of legislative power.

Nor do we think that the respondent has brought itself within the self-executing exemptions created by Article X, Section 4 of the Constitution. That Section reads as follows: "There shall be exempted from taxation all County, township and municipal property used exclusively for public purposes and not for revenue, and the

property of all schools, colleges and institutions of learning, all charitable institutions in the nature of asylums for the infirm, deaf and dumb, blind, idiotic and indigent persons, except where the profits of such institutions are applied to private uses; all public libraries, churches, parsonages and burying grounds; but property of associations and societies, although connected with charitable objects, shall not be exempt from State, County or municipal taxation: *Provided,* That as to real estate this exemption shall not extend beyond the buildings and premises actually occupied by such schools, colleges, institutions of learning, a s y l u m s, libraries, churches, parsonages and burial grounds, · although con-nected with charitable objects."

That constitutional provision is largely a limitation upon the powers of the General Assembly in the matter of granting tax exemptions. It grants such exemptions to property used in stated classifications which do not encompass the present case, and proceeds to limit such exemptions to property of associations and societies which is actually used for the stated purposes, and not merely "connected" with the property so used, or where the profits of the institutions are applied to private uses. See *Epworth Orphanage v. Wilson,* 185 S. C. 243, 193 S. E. 644; *Strong v. City of Sumter,* 185 S. C. 203, 193 S. E. 649; *Trustees of Wofford College v. City of Spartanburg,* 201 S. C. 315, 23 S. E. (2d) 9.

It does not appear to us that there is anything in Section 4 of Article X of the Constitution which is applicable to the present problem. Obviously cases involving exemptions from taxation granted to property owned and operated by or on behalf of municipalities, counties, and other political units, throw no light upon the problem under discussion. Such property is exempted as public property, provided it is used exclusively for public purposes and not for revenue. *Ashmore v. Greater Greenville Sewer District et al.,* 211 S. C. 77, 44 S. E. (2d) 88, 173 A. L. R. 397; *Cathcart v. City*

of Columbia, 170 S. C. 362, 170 S. E. 435; *Cothran v. Mallory*, 211 S. C. 387, 45 S. E. (2d) 599.

As distinguished from the cases cited, the property involved in the present case is privately owned and privately controlled, and operated for the primary purpose of obtaining revenue to enable the Corporation to fulfill the purposes for which it was incorporated.

The conclusions hereinabove stated render it unnecessary to deal separately with the order made by Judge Lide on the demurrer to the complaint. The case comes before us on all of the pleadings and on the testimony taken thereunder. Factually, as hereinbefore stated, it is a very different case from that with which Judge Lide dealt when he overruled the demurrer to the complaint. We neither affirm nor reverse the order made by him.

The orders refusing to strike the answer of the appellant, and overruling the demurrer thereto were in our opinion sound and proper, as is evidenced by the final conclusion reached by us on the merits of the cause.

The answer of the appellant, while raising legal questions with which Judge Lide dealt in his order overruling the demurrer to the complaint, also raised important issues of fact bearing upon the character and purposes of the Corporation, and upon the applicability of constitutional provisions determinative of its right to a tax exemption.

In view of our conclusion that under the applicable constitutional and statutory provisions, the property of the Corporation is not exempt from taxes, it is unnecessary for us to deal with the exceptions relating to Article III, Section 34 of the Constitution, and to other exceptions of appellant not hereinbefore dealt with.

All of the testimony in the record of this case was taken over the objection of the respondent that the questions presented in this cause are legal questions, determinable on the pleadings and governed by the constitutional and statutory

provisions relied upon by the respective parties. In the order of the Circuit Judge awarding judgment in favor of the respondent, this issue is not discussed.

In our view of the case the testimony respecting the nature of the activities of the Corporation, and the income received and disbursements made by it, were all matters bearing upon the material issue as to the alleged eleemosynary character of the Corporation and as to the applicability of the statutory and constitutional provisions dealing with tax exemptions.

And since the testimony taken deals with the only issues of fact that could arise in this case, it would appear that the consent of respondent's counsel to the granting of the order of reference is in itself a recognition of the relevance and admissibility of the testimony.

Finally, the appellant objected to the incorporation into the transcript of record of the notice of motion to strike the answer, the demurrer to the answer, the order of the Circuit Judge on the motion to strike and the demurrer, the notice of appeal, and the exceptions (to the incorporation of these pleadings in the transcript?).

It was of course unnecessary to print the notice of appeal. Had the suggestion been made to the Circuit Judge, he undoubtedly would have indicated to counsel the sufficiency of merely stating in the transcript that notice of intention to appeal from the order in question had been served. Apparently this was not considered. The motion to strike, the answer, the demurrer to the answer, and the order of the Circuit Judge thereon, however, were at least relevant to the presentation of the case in this Court. Like the notice of intention to appeal, they might have been readily covered by a brief narrative statement, but this does not appear to have been proposed on either side. We hold, under the circumstances, that they properly constitute a part of the transcript.

The judgment of the Court below is reversed.

FISHBURNE, STUKES and TAYLOR, JJ., concur.

OXNER, J., did not participate.