John BEAN, Appellant,

v.

PIEDMONT INTERSTATE FAIR AS-SOCIATION, Appellee.

In the Matter of John Bean, Plaintiff, v. Piedmont Interstate Fair Association, Defendant, and Piedmont Interstate Fair Association, Third Party Plaintiff, v. Fireworks Corporation of America, a corporation, Jack Kochman and Jack Kochman, Inc., a corporation, Third Parties Defendants. C. A. 1268.

No. 6939.

United States Court of Appeals
Fourth Circuit.

Argued March 14, 1955.

Decided April 14, 1955.

Edwin W. Johnson, Spartanburg, S. C. (John C. Williams, Greenville, S. C., and Warren Justice, Spartanburg, S. C., on brief), for appellant.

Thomas B. Butler, Spartanburg, S. C. (Robt. F. Chapman, Spartanburg, S. C., on brief), for appellee.

Carlisle, Brown & Carlisle, and J. Hertz Brown, Spartanburg, S. C., on brief, for Jack Kochman and Jack Kochman, Inc., third parties-defendants.

Before SOPER and DOBIE, Circuit Judges, and STERLING HUTCHESON, District Judge.

SOPER, Circuit Judge.

This case, now on its second appeal, was brought by John Bean, a citizen of North Carolina, against Piedmont Interstate Fair Association, a South Carolina corporation, on account of injury sustained in an explosion of fireworks at a fair conducted by the defendant at Spartanburg, South Carolina. Various proceedings were taken in the District Court which are described in some detail in our opinion on the earlier appeal, 209 F.2d 942. The Fair Association moved to dismiss the complaint on the ground that it is a charitable corporation, immune from liability for tort under the laws of South Carolina; and while decision on this motion was withheld in the expectation of a controlling decision in another case by the Supreme Court of South Carolina, the Fair Association filed a third party complaint against certain non-residents, alleging that they were in charge of the display of fireworks and that they were bound to indemnify the Fair Association, if it should be held to be liable to the plaintiff. The third parties defendant were summoned and filed answers denying liability.

Subsequently other motions were filed, including a motion of the third party defendants to dismiss the third party complaint on the ground that it failed to state a legal claim for relief, and a motion of the plaintiff to dismiss his complaint without prejudice, both of which the court granted. On appeal to this court we held that the propriety of the order permitting the plaintiff to dismiss his complaint without prejudice and at the same time dismissing the third party complaint for the reasons stated could not be determined on the facts before us until certain interrogatories theretofore filed in the District Court had been answered, and certain discovery proceedings had been had. The case was therefore remanded to the District Court for further proceedings.

Upon remand the Fair Association renewed the defense set up in its motion to dismiss and also in its answer, that it is a charitable corporation, and also filed a supplemental motion to dismiss on the ground that the plaintiff was an employee of the Fair Association and hence if it had any liability to him by reason of the explosion, the matter was governed by the Workmen's Compensation Act of South Carolina and the rights and liabilities of the parties were within the exclusive jurisdiction of the Workmen's Compensation Commission and beyond the jurisdiction of the District Court. The plaintiff on his part moved to strike the defenses of contributory negligence and assumption of the risk set up in the defendant's answer on the ground that the defendant came within the terms of the Workmen's Compensation Act of the State but had failed to comply with its requirements, and was therefore subject to suit at common law in which the defenses of contributory negligence and assumption of the risk would not be available. After further hearing the District Judge granted the motion of the Fair Association to

dismiss on both grounds therein set out and, having reached these conclusions, found it unnecessary to pass on the plaintiff's motion to strike the defenses as above described. 124 F.Supp. 385.

The material in the record bearing on the corporate character of the Fair Association is contained in the charter and bylaws of the corporation, the allegations of the complaint, and in a lease between the corporation and the City of Spartanburg. The charter purports to be issued under § 8158 to § 8168 of Article 3 of the South Carolina Code of 1942, now § 12–751 to § 12–765 of the Code of 1952. These statutes authorize the Secretary of State to issue certificates of incorporation to any church, college, school, lodge, society, company or other association having no capital stock divided into shares, but holding or desiring to hold property in common for religious, educational, social, fraternal, charitable or eleemosynary purposes other than for the insurance of life, health, accident or property. § 8158. Notice must be published by the Association desiring to be incorporated in one or more newspapers and a written declaration must be filed in the office of the Secretary of State, giving the names of the incorporators and the purposes of the proposed corporation, and the Secretary of State is authorized to refuse to issue the charter if he has reason to suspect that the Association will be operated in violation of the law. § 8159. Such a corporation has the power amongst others to make contracts, sue and be sued, to hold property and make bylaws: § 8161; and no irregularity in complying with the provisions of the statutes shall be held to vitiate the incorporation until a direct proceeding to annul the charter is instituted by the proper authorities of the State. § 8162.

The petition for incorporation and the certificate of incorporation of the Fair Association contained in effect the following allegations: The organization holds property in common for religious, educational, social, fraternal, charitable or other eleemosynary purposes. It is not organized for profit or gain to the members, nor for the insurance of life, health, acci-

dent or property; the purpose of the corporation is to operate a fair association for the education, refinement and betterment of the people at large. The bylaws repeat the statement as to the object and purpose of the corporation and in addition contain the statements that the enterprise is the maintenance in the counties of Spartanburg, Union, Cherokee and Laurens in South Carolina, and Polk and Rutherford Counties in North Carolina, of public fairs, expositions, race meets, entertainments and exhibitions; and sales of livestock, farm products, textile products, and machinery; the encouragement of dairying and livestock production; agricultural, horticultural, and industrial pursuits; the operation of a public amusement park; and the education, refinement and betterment of the people at large. The members are those who appear on the books as the holders of one or more memberships, who are allowed to vote at meetings by person or by proxy. The business and property of the Association are managed by a Board of Directors, who consist of the State Senators and County Agents of each of the above named counties, and also of one director for each 10,000 population from each of said counties.

The bylaws further provide that no dividend shall be paid to members in money and no member of the Association shall ever participate in any earnings or profits, all of which are to be used to further the purposes of the exposition, but each member is entitled to receive not less than two nor more than five tickets for general admission to the fair grounds. Certificates of membership may be sold, assigned or pledged by endorsement and delivery.

The lease between the Fair Association and the City grants to the Fair Association a tract of land in the City known as the Spartanburg Fair Grounds, with all the buildings thereon, for the term of ten years, at the rental of one dollar; and the Fair Association agrees to furnish a list of stockholders, officers and directors each year, and also to furnish a financial statement each year and to use so much of the funds derived from operations for the

maintenance of the property and the race track as the receipts may warrant. The City reserves the right to use the grounds and facilities and to establish suitable athletic fields for the public as may be deemed necessary by the City Council. The City agrees to hold the Fair Association harmless on account of any claim for damages to persons or property during the time the City is using the premises, and in like manner the Fair Association agrees to hold the City harmless on account of claims resulting from the use of the premises by the Fair Association. The lease also provided that only the officers receiving salary or wages shall be paid out of the funds derived from the proceeds of the fair and other events staged by the Association; and if at any time the Association ceases to exist and operate as an eleemosynary corporation and ceases to foster those things such as agriculture, horticulture, industry, domestic arts and sciences, and public instruction in those matters, and entertainment usually conducted at fairs, the lease shall become null and void at the option of the City. The Association binds itself in the event of such a termination of the lease to pay all outstanding claims and reimburse the stockholders for the amount paid into the Association by them, provided the funds are sufficient for this purpose, and thereafter to turn the remaining assets of the Association over to the City. The original lease has been extended so as to expire on August 4, 1972.

The allegations of the complaint, which under the motion to dismiss must be taken as true, contain in effect the following statement: The corporation has issued capital stock in the amount of $18,690 in the form of 948 shares at $20 each. It annually issues to its stockholders in lieu of cash dividends four general admission passes worth 50¢ each for each share of stock. The stock is voted at stockholders' meetings and is sold and transferred on the books of the company in the usual manner. Annually during one week in the month of October the corporation operates an enterprise called the Piedmont Interstate Fair on rent free ground, located in and belonging to the City of Spartanburg; and incident to its operations it displays exhibits of needlework, cookery, domestic and agricultural products, cattle and live stock. Twice each night at the 1951 Fair, at which the plaintiff was injured, it put on an elaborate fireworks display and a dare-devil exhibition of automobile drivers, and used explosives in connection therewith. The revenues of the corporation consist of paid admissions, rent from concessionaires, receipts from games and amusements, and paid admissions to the grand stand provided for spectators of automobile races and other attractions, and revenues from a parking lot. The Association owns the grand stand and numerous buildings for its exhibits. In 1931 the income from these sources amounted to $92,334.39 and after making improvements amounting to $20,879.83 its net earnings were $573.55. It has assets in bank of $8,859.05, real estate and equipment valued at $32,277.23, and cattle and barn $11,112.35. Its liabilities consist of its capital stock, notes payable in the sum of $8,000 and it has a surplus of $25,288.63.

The burden of the argument on behalf of the Fair Association as to the first point is that its character as a charitable corporation is established by its charter and the statutes under which it was organized, and is not open to collateral attack in this case. Attention is called to § 8162 of the South Carolina Code of 1942, § 12–757 of the 1952 Code, which provides that no irregularity in complying with the statutory provisions for the formation of a charitable corporation shall vitiate the incorporation except by a direct proceeding by the proper authorities of the State; and to the general statutes § 10–2253 to § 10–2255 of the Code of 1952 which clothe the Attorney General of the State with power under certain conditions to bring action to annul the charter of an offending corporation; and to certain decisions of the Supreme Court of the State, such as Atlantic Coast Line R. Co. v. Epperson, 85 S.C. 134, 67 S.E. 235, which lay down the rule that when a body assumes to be and

act as a corporation, it is presumed that all steps necessary to enable it to act as a corporate entity have been taken and the rightfulness of its existence and its power to do business cannot be litigated in actions between private parties but can be questioned only by the State. See also Huguenot Mills v. George F. Jempson & Co., 68 S.C. 363, 47 S.E. 687; Francis Marion Hotel v. Chicco, 131 S.C. 344, 127 S.E. 436; State ex rel. City Council of Spartanburg v. Spartanburg, C. & G. Railroad, 51 S.C. 129, 28 S.E. 145.

The contention that the Fair Association must be treated in this suit as a charitable corporation is not supported by the South Carolina decisions either as to the right of a private litigant to go behind the statements in its charter or act of incorporation, or as to the true nature of the Fair Association when the extrinsic facts are taken into consideration. The South Carolina decisions are clear on both points. The general rule that the *existence* of a corporation cannot be attacked collaterally on account of irregularities in its formation does not preclude evidence *aliunde* the charter as to the nature of its business. Thus, it was expressly held in Vermillion v. Woman's College of Due West, 104 S.C. 197, 88 S.E. 649, where suit was instituted against the College for injuries sustained by the fall of a balcony during an entertainment in the College auditorium and the College offered no evidence of its relation to the public, that the statements in the act of incorporation were insufficient to show that the College was a charitable institution, immune from suit; and this holding was made in a decision which strongly upheld the exemption of charitable corporations under such circumstances. See also White v. Central Dispensary, 69 App.D.C. 122, 99 F.2d 355, 359, 360, 119 A.L.R. 1002.

Extrinsic evidence was also considered in Johnson v. Spartanburg County Fair Ass'n, 210 S.C. 56, 41 S.E.2d 599, which related to a sale of the assets of the Spartanburg Fair to trustees to promote the formation of the Piedmont Interstate Fair Association, the appellee in this case. It was necessary to decide whether the Fair Association was a charitable or business corporation. It had been incorporated under the statutes relating to business corporations and this fact was taken into consideration but it was not held to be conclusive. On the contrary the court was at pains to describe in detail the nature of the business of the corporation which was substantially similar to the description of the Fair above set out. In addition the court pointed out, 210 S.C. at page 68, 41 S.E.2d at page 604, that "The property of the corporation has never been dedicated to an eleemosynary purpose", and finally came to the conclusion that the Fair Association was not an eleemosynary corporation.

Even more significant is the opinion of the Supreme Court of South Carolina in the recent case of Bush v. Aiken Elec. Cooperative, Inc., S.C., 85 S.E.2d 716, in which it was held that a cooperative formed under the Rural Electric Cooperative Act of South Carolina, was not immune from tort liability as a charitable corporation, and the opinion of this court in a similar case, Byrd v. Blue Ridge Rural Cooperative, Inc., 4 Cir., 215 F.2d 542, was approved. In support of its argument the Supreme Court referred by way of analogy to cases relating to agricultural or fair associations—similar in character to the corporation in the pending suit. The Court said [85 S.E.2d 719]:

"The fact that a corporation is not operated for profit is not controlling on the question of whether it is a charitable corporation. Tri-State Fair v. Rowton, 140 Tenn. 304, 204 S.W. 761, L.R.A.1918F, 657. In this case and in Lichty v. Carbon County Agricultural Association, D.C., 31 F. Supp. 809, it was held that a fair association, although not organized for profit and serving an educational purpose, was not entitled to immunity from tort liability on the ground that it is a charitable institution. In Textile Hall Corporation v. Hill, 215 S.C. 262, 54 S.E.2d 809, we held that a corporation organized primarily for the purpose of holding biennial expositions dealing with the textile

industry, although nonprofit in nature, was not for a charitable, scientific or educational purpose within the contemplation of the Constitution permitting institutions organized for these purposes to be exempt from taxation."

The decision of the court in Tri-State Fair v. Rowton, 140 Tenn. 304, 204 S.W. 761, L.R.A.1918F, 657, cited in the foregoing quotation with approval, furnishes the complete answer to the appellee's argument. The court said:

"In the pending case there appears no gift of a founder for the perpetual distribution of bounty to beneficiaries. The chief sources of income for the conduct of the association's business are in receipts from admission fees, charges made for concessions and entrance fees to exhibitors. It is true that business men of the city of Memphis make donations towards the defendant's current expenses, from time to time, as motives of patriotism or self-interest may prompt, and this fact appears to be unduly stressed by the Court of Civil Appeals as a factor deflecting its ruling in favor of the fair association.

"The strongest argument in defendant's behalf is that its mission is educational, and therefore that it must be treated as a public charity. It appears that exhibitions of live stock, farm products, handicraft, machinery, etc., are among the purposes of the association, and such do doubtless tend in one sense to educate or instruct certain members of the public. But so also do many other promotions along the line of athletics, theatricals, etc. The primary object, however, is not to educate but to amuse and afford recreation." 140 Tenn. at pages 308, 309, 204 S.W. at page 762.

"The corporate purpose of the defendant was not to make money for its members, but it was to make money for itself to be used in carrying forward and enlarging its enter-

prise. This could only be done by inducing the public to patronize its exhibitions, and when members of the public attend they are entitled to demand the exercise of ordinary care on the part of the association in the keeping safe of such grand stands as its officers may see fit to provide. If the rule of immunity were applied in the circumstances here appearing, a corporation created for public welfare might become one for public detriment, should its negligence go to the point where a grand stand was permitted to become so insecure as to fall causing the deaths of a large number of spectators.

"The income of the defendant, especially from admission fees, should be held to accrue subject to the risks of the negligent management of the corporate agencies which affect the patrons who furnish the lifeblood of the institution in the payment of those fees." 140 Tenn. at pages 310, 311, 204 S.W. at page 763.

Lichty v. Carbon County Agricultural Association, supra, also cited by the Supreme Court of South Carolina in Bush v. Aiken Elec. Cooperative, Inc., supra, involved similar facts and reached the same conclusion. We are obliged to conclude in the record before us, that under the law of South Carolina the Fair Association, although incorporated under the statutes relating to charitable corporations, is not an eleemosynary body.

■ We come then to the question whether the District Court has jurisdiction to try the case or whether it is cognizable only by the Workmen's Compensation Commission of South Carolina. Both parties contend that the Fair Association is subject to the provisions of the Act. It is to the interest of the plaintiff to take this position in order to support its contention based on § 72–404 of the Act that the Fair Association is subject to suit at law without the benefit of the defense of assumption of the risk and contributory negligence because it had failed to secure the payment of compensation to its employees as required by §

72–401 of the statute. It is to the defendant's interest also to proceed under the statute because thereby the amount of the plaintiff's recovery for his injuries would be limited; and the defendant further contends that the question of its noncompliance with the Act cannot be litigated in this suit but must be determined by the Workmen's Compensation Commission.

Hence both parties invoke the provisions of the Act; but neither party gives consideration to § 72–107 thereof which exempts, amongst others, "State and county fair associations" from the provisions of the statute. In our view, unassisted by argument of counsel or by controlling State decisions, the record in this case shows that the Fair Association is a County Fair Association within the meaning of the Act. These words must be given their normal meaning and it can hardly be questioned that the purposes and activities of the Fair Association in this case are substantially the same as those of County Fairs generally, which are a familiar feature of American life. It is true that the control of the corporation lies in its members or stockholders, and not in the State or County authorities, but we do not regard this fact as decisive. It is clearly shown that the Fair is conducted to exploit and promote the interests of the citizens of certain counties for the bylaws show that the exhibitions are held in order to promote the sales of local products and to encourage agricultural and industrial pursuits, and to further the interests of the people at large in six counties that are named therein. Furthermore, the State Senators and Agents of these Counties are made ex-officio directors and the remaining directors are allotted to the six counties in proportion to their respective populations. Thus the nature of the activities and their promotion in the interests of the county communities justify the conclusion that the Fair Association may be fairly considered a County Fair Association within the terms of the statute. It follows that if the pending case should be tried as a suit at common law, the defendant would not be precluded from making the ordinary common law defenses.

■ We decide the questions as to the nature of the corporation and the jurisdiction of the court upon the present record, and the parties are not precluded upon the remand of the case from presenting additional relevant matter, if any there be, for the consideration of the court. If the court should be satisfied upon further hearing that the Fair Association is a charitable corporation the case should be dismissed. If the court should find that the Fair Association is not a charitable corporation and is not a State or County Fair Association within the statutory exemption, the further question would arise whether the plaintiff, before proceeding with the instant suit, must secure a holding from the Workmen's Compensation Commission of the State that the Fair Association had not provided compensation for its employees within the terms of § 72–404 of the Code of 1952.[1]

The Fair Association contends that the inquiry is not whether there was simply a failure on its part to comply with the Act, but whether there was such a refusal or neglect as to subject it to punishment by fine, as provided by the Act. We

1. Any employer required to secure the payment of compensation under this Title who refuses or neglects to secure such compensation shall be punished by a fine of ten cents for each employee at the time of the insurance becoming due, but not less than one dollar nor more than fifty dollars for each day of such refusal or neglect, and until the same ceased, and he shall be liable during continuance of such refusal or neglect to an employee either for compensation under this Title or at law in an action instituted by the employee or his personal representative against such employer to recover damages for personal injury or death by accident and in any such action such employer shall not be permitted to defend upon any of the grounds mentioned in Section 72–118.

The fine provided in this section may be assessed by the Commission in an open hearing with the right of review and appeal as in other cases.

agree that if the matter to be decided is the imposition of a fine by way of punishment, only the Commission can make the preliminary determination as to whether or not the employer has complied with the Act and only the Commission has the power under § 72–70 of the Act to assess and enforce the collection of the fine. The object of the present case, however, is not to secure punishment of the employer for failure to comply with the terms of the statute, but merely to take advantage of the privilege to proceed against the employer in a suit at common law in which the crucial issue would be the employer's negligence and the common law defenses above mentioned would be barred. The statute does not require, as a preliminary to the action at law, a finding by the Commission as to the refusal or neglect of the employer to comply, and no case has been found, notwithstanding diligent search of experienced counsel, in which the question has arisen under the corresponding provisions of the Workmen's Compensation statutes of other states. In our opinion it is unreasonable to suppose that the legislature intended to favor the defaulting employer and to impede the injured employee by subjecting him to the delay and expenses incident to a preliminary inquiry by the Commission, particularly as the question of non-compliance either by refusal or neglect is one of fact easily within the competence of a common law court.

Numerous cases have upheld the right of an injured employee to maintain a suit at common law against an employer who has failed to obtain insurance as required by the Workmen's Compensation laws. See Buhler v. Maddison, 109 Utah 267, 176 P.2d 118, 168 A.L.R. 177; Neff v. Baiotto Coal Co., 361 Mo. 304, 234 S.W. 2d 578; Jones v. Brink, Fla., 39 So.2d 791; Nantico v. Matuszak, 322 Mich. 644, 34 N.W.2d 506; Hartford Acc. & Indmn. Co. v. Christensen, 149 Tex. 79, 228 S.W. 2d 135; Larson, Workmen's Compensation Law, §§ 67.21, 92.10. The question now under consideration was not raised in these cases and this uniform treatment of the problem is significant. In the last mentioned case the main point for decision by the Texas court was whether or not the employee was covered under a policy the employer had with the insurer. The court held that the employee was not covered and that he could proceed against his employer as at common law; and there was no suggestion that the court was not competent to determine the question of coverage in the first instance.

We conclude, therefore, that the employee in the pending case did not err in filing suit in the lower court without first securing a ruling from the Commission as to his employer's compliance or non-compliance with the Workmen's Compensation Law.

Reversed and remanded for further proceedings.